**BIO–TECHNOLOGY GENERAL CORP., Plaintiff,**

v.

**GENENTECH, INC., Rogers & Wells, and John E. Kidd, Defendants.**

No. 95 Civ. 0110 (CBM).

United States District Court, S.D. New York.

May 16, 1995.

Norman Zivin, John White, Cooper & Dunham LLP, New York City, for Bio–Technology Gen. Corp.

James Ringer, Nicholas Coch, John Kidd, Rogers & Wells, New York City, for Genentech.

Kenneth Conboy, Patrick Loughlin, Mudge Rose Guthrie Alexander & Ferdon, New York City, for Rogers & Wells, John Kidd.

## OPINION

MOTLEY, District Judge.

## DEFENDANTS' MOTION TO DISMISS CLAIMS 2 AND 5–12 OF THE COMPLAINT

This is a related case to *Novo Nordisk v. Genentech* which also involves some of the same patents on human growth hormone. In this case, plaintiff seeks a declaratory judgment that United States Patent Nos. 4,342,-832 (the '832 patent), 4,601,980 (the '980 patent), and 5,221,619 (the '619 patent) are invalid and not infringed by plaintiff. This also is an action for unfair competition, malicious prosecution, abuse of process, antitrust violations and prima facie tort under New York Law. This action arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the patent laws of the United States, Title 35, United States Code. Jurisdiction is based on 28 U.S.C. §§ 1331–32, 1337–8, while venue is based on 28 U.S.C. 1391(b) and (c).

The parties in this case are involved in the business of genetically-engineered pharmaceutical products. Plaintiff BTG is a corporation organized and existing under the laws of Delaware with its principal place of business in New Jersey. Defendant Genentech is a corporation organized to do business in the state of Delaware having its principal place of business in South San Francisco, California, and doing business in the Southern District of New York. Rogers & Wells is a law partnership organized and existing in New York state and its principal place of business is New York City. John Kidd is a partner with the firm and is admitted to practice in New York. He is the principal attorney representing Genentech in a variety of patent law suits brought by Genentech.

Plaintiff is waiting to gain the approval of the Food and Drug Administration ("FDA") to sell Bio-tropin, genetically-engineered human growth hormone, inside of the United States. Plaintiff intends to import Bio-tropin for commercial distribution in the United States following approval by the FDA.

In March 1993, defendant Genentech brought an action against plaintiff in the U.S. International Trade Commission (ITC) alleging that plaintiff's product, Bio-tropin, infringed two of its patents: the '832 and '980 patents. The Administrative Law Judge ("ALJ"), after a hearing, dismissed Genentech's complaint with prejudice due to what the ALJ deemed extreme misconduct of defendant Genentech and its lawyers at Rogers & Wells with respect to the production of documents. The next day, on December 1, 1994, defendant Genentech commenced a law suit against plaintiff in Delaware for patent infringement of the same two patents involved in the ITC proceedings. Thereafter, plaintiff moved to transfer the Delaware action to this court and defendant Genentech has not opposed the motion. On January 6, 1995 plaintiff brought the instant action for declaratory judgment of invalidity and noninfringement of the patents on its part.

In it's motion to dismiss, Genentech has moved to dismiss counts 2 and 5–12 of the complaint and Genentech's attorneys have moved to dismiss counts 5–7 and 12 of the complaint.[1]

I. The Standard For Dismissal Under Rule 12(b)(6).

■ A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if it appears beyond doubt that plaintiff can prove no set of facts in support of their claims which would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1174 (2d Cir. 1993); *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir.1985); *Seagoing Uniform Corp. v. Texaco, Inc.,* 705 F.Supp. 918, 927

---

1. On March 24, 1995, plaintiff filed an amended complaint in which it dropped its Fifth Claim for relief for alleged Civil Rights violations. Therefore, this opinion will not address that claim.

The parties agreed by letter that the motion to dismiss would go to the amended complaint without the necessity of filing a new motion.

(S.D.N.Y.1989). Therefore, on a motion to dismiss, all factual allegations of the complaint must be accepted as true, *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984); *Frasier v. General Elec. Co.,* 930 F.2d 1004, 1007 (2d Cir.1991), and all reasonable inferences must be made in plaintiff's favor. *Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir.1989); *Meilke v. Constellation Bancorp,* No. 90–3915, 1992 WL 47342, at *1 (S.D.N.Y. Mar. 4, 1992). "The court's function on a Rule 12(b)(6) motion is not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient." *Goldman v. Belden,* 754 F.2d at 1067 (citation omitted).

### A. Plaintiffs' standing to assert antitrust claims.

Defendant argues that plaintiff lacks standing to assert an antitrust claim because without FDA marketing approval, plaintiff is in no position to allege any interference by defendant with plaintiff's ability to receive income from prospective sales of its human growth hormone product. Defendants cite *National Ass'n of Pharmaceutical Mfrs., Inc. v. Ayerst Lab.,* 850 F.2d 904, 913 (2d Cir.1988) for this proposition.

In its complaint, plaintiff alleges that defendants have violated the Sherman and Clayton Antitrust Acts in that Genentech has approximately 70% of total sales in the market for products treating human growth hormone deficiency in the United States, has used this advantage to control prices and create high profits, and has blocked the efforts of others and plaintiff to enter the market as reported in *The New York Times* on January 6, 1995.

In addition, plaintiff alleges that Genentech has brought numerous law suits and counterclaims against plaintiff seeking temporary and permanent exclusion orders even though plaintiff does not have FDA approval to sell Bio-tropin within the United States.

■ Furthermore, the complaint alleges as an antitrust injury the costs incurred in connection with defending a litigation in which Genentech lacked probable cause to pursue plaintiff before the ITC and the Delaware District Court because plaintiff lacks FDA approval to sell its drug in this country. This is a well recognized type of antitrust injury which compromises the costs incurred in defending a "sham" litigation filed in violation of the antitrust laws. *Rickards v. Canine Eye Registration Foundation,* 783 F.2d 1329, 1334–35 (9th Cir.), cert. denied, 479 U.S. 851, 107 S.Ct. 180, 93 L.Ed.2d 115 (1986). In the patent field, this principle was established in the *Handgards I* and *Handgards II* cases, *Handgards, Inc. v. Ethicon, Inc.,* 601 F.2d 986, *cert. denied,* 444 U.S. 1025, 100 S.Ct. 688, 62 L.Ed.2d 659 (1980), *on remand,* 552 F.Supp. 820, *aff'd,* 743 F.2d 1282 (9th Cir.), *cert. denied,* 469 U.S. 1190, 105 S.Ct. 963, 83 L.Ed.2d 968 (1985). These cases established the recoverability of damages by victims of bad faith patent infringement suits. The Ninth Circuit explicitly held that pleading the costs of defending such suits alleges a cognizable antitrust injury.

> Plaintiff must show that the injury for which it seeks to recover is "the type the antitrust laws were intended to prevent" and "flows from that which makes defendant's acts unlawful." In a suit alleging antitrust injury based upon a bad faith prosecution theory it is obvious that the costs incurred in defense of the prior patent infringement suit are an injury which "flows" from the antitrust wrong.

*Handgards I,* 601 F.2d at 997.

■ Because of the confusion surrounding the meaning of "sham" litigation, the Supreme Court in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,* —— U.S. ——, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993) set out a two-part definition of "sham" litigation for purposes of determining whether or not an antitrust defendant is entitled to immunity from antitrust litigation under the Noerr–Pennington doctrine. The Noerr–Pennington doctrine, which has its roots in the First Amendment, ensures that those who petition the government in good faith for redress are generally immune from antitrust liability. *Id.* at ——, 113 S.Ct. at 1926; *United Mine Workers of America v. Pennington,* 381 U.S. 657, 670, 85 S.Ct. 1585, 1593, 14 L.Ed.2d 626 (1965);

*Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 139–40, 81 S.Ct. 523, 530–31, 5 L.Ed.2d 464 (1961); *United States Gypsum Co. v. National Gypsum Co.*, 1994 WL 14648, *1 (N.D.Ill. January 20, 1994); *TRW Financial Systems, Inc. v. UNISYS Corp.*, 835 F.Supp. 994, 1011 (E.D.Mich.1993).

> First, the lawsuit must be objectively baseless in the sense that no reasonable litigant would realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized under Noerr, and an antitrust claim premised on the sham exception must fail ... Under the second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals an attempt to interfere directly with the business relationships of a competitor through the use of the governmental process—as opposed to the outcome of that process—as an anticompetitive weapon. This two-tiered process requires the plaintiff to disprove the challenged lawsuit's legal viability before the court will entertain evidence of the suit's economic viability. *Professional Real Estate Investors,* —— U.S. at ——, 113 S.Ct. at 1928.

The Court warned that the mere fact of losing the underlying lawsuit does not lead to the conclusion that it was a "sham". The lower courts were instructed to remember, "even when the law or the facts appear questionable or unfavorable at the outset, a party may have an entirely reasonable ground for bringing suit." *Id.* at ——, 113 S.Ct. at 1928.

Defendant argues that according this standard, plaintiff's fourth cause of action must be dismissed because plaintiff cannot allege any facts showing that defendant's ITC action was objectively baseless. Therefore, Noerr–Pennington immunity is applicable. This court finds and concludes that plaintiff cannot show that the ITC proceeding was "sham" litigation.

■ This conclusion is based upon the findings of the ALJ in the ITC proceeding that plaintiff alleges defendant brought in bad faith. Even on a Rule 12(b)(6) motion this court may properly take notice of docu-

ments outside of the four corners of the complaint. In *Cortec Industries, Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir.), *cert. denied,* 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992), the Second Circuit specified under what conditions a district court could take notice of such documents.

A finding that plaintiff has had notice of documents used by defendant in a 12(b)(6) motion is significant since, as noted earlier, the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason—requiring notice so that the party against whom the motion to dismiss is made may respond—that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions. Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.

The stock purchase agreement, Bowles' offering memorandum, and the warrant were documents plaintiffs had either in its possession or had knowledge of and upon which they relied in bringing suit. It did not lack notice of those documents; these papers were integral to its complaint. Consequently, though the district court, in light of what it viewed as conflicting precedents in this Circuit, declined to consider these exhibits, it could have viewed them on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim.

*Cortec Industries, Inc.,* 949 F.2d at 48; *I. Meyer Pincus & Assocs. v. Oppenheimer & Co., Inc.,* 936 F.2d 759, 762 (2d Cir.1991).

From the facts of this case, plaintiff is clearly on notice of the decision in the ITC proceeding. This proceeding is not just integral to plaintiff's complaint, it is the sole basis for the complaint. Therefore, it is properly before this Court. After becoming familiar with the ITC proceeding, it is clear why plaintiff does not wish for this court to

consider the determinations of the ALJ. These determinations completely undermine plaintiff's contentions that the ITC proceeding was a sham. The ITC found (1) based on defendant Genentech's complaint. that sufficient bases existed for the ITC to commence an investigation against plaintiff for infringement of these patents; (2) the ALJ denied no less than six motions for summary determination, five attacking the substance of defendant's patents; and (3) the ALJ ultimately held (although based on an incomplete record) that plaintiff was infringing defendant's '980 and '832 patents.[2] Therefore, defendant's ITC proceeding can in no way be termed objectively baseless because the facts speak loudly to the contrary. As a result, defendant has Noerr–Pennington immunity and plaintiff's antitrust cause of action based upon *Handgards* allegations must fail and be dismissed.

## II. Malicious Prosecution under New York Law

Based on the same factual allegations as the antitrust cause of action, plaintiff alleges common law claims for malicious prosecution, abuse of process, prima facie tort, unfair competition, and violation of the Donnelly Act, the New York antitrust statute.[3]

■■■■■ Defendants' also seek to have plaintiff's malicious prosecution claim dismissed. Plaintiff claims that Rogers & Wells and Mr. Kidd with malice and without probable cause initiated judicial proceedings, the ITC case and the Delaware case. Under New York law there are strict pleading requirements that apply to a malicious prosecution cause of action, such as that plaintiff suffered an interference with his person or property similar to the entry of a provisional remedy such as attachment, arrest, or injunction. *Levitin v. Miller*, 1994 WL 376078, *3 (S.D.N.Y. 1994); *Charles of the Ritz Group, Ltd. v.*

*Marcon, Ltd.*, 1985 WL 1356, *4 (S.D.N.Y. 1985) (Motley, J.) In its complaint, plaintiff does not allege that Rogers & Wells or Mr. Kidd caused it to suffer an unlawful interference with its property rights similar to a provisional remedy. Courts in this district have dismissed malicious prosecution complaints for failure to satisfy the requirement that the pleadings include a claim of the misuse of a provisional remedy. *See, e.g., Paumgarten v. Handels–Und Privatbank*, 1992 WL 18844, *3 (S.D.N.Y.1992) ("In order to establish a claim for malicious prosecution . . . a plaintiff must show among other matters that there was some interference with his person or property. This requirement is satisfied only if a court issues a provisional remedy, such as attachment, an order of arrest or an injunction.") *Diamond v. Strassberg*, 751 F.Supp. 1152, 1153 (S.D.N.Y. 1990) (same); *Tedeschi v. Smith, Barney, Harris Upham & Co., Inc.*, 548 F.Supp. 1172, 1175 (S.D.N.Y.1982) (same).

In this situation, defendant Genentech sought, but failed to obtain, extraordinary relief. Plaintiff contends that although defendant Genentech did not obtain the temporary exclusion order, that its lack of probable cause and the $2 million in attorney's fees that plaintiff expended gives rise to an unlawful interference with its property. This court has already found that defendant Genentech did have probable cause to bring the ITC proceeding and the Delaware case against plaintiff. Therefore, plaintiff's claim for malicious prosecution is dismissed.

## III. Abuse of Process and Prima Facie Tort claims

■■■■■ Defendants seek to have these claims dismissed because plaintiff cannot satisfy the element of a legally cognizable interference with property. To have a legally sufficient claim for abuse of process and for

---

**2.** These findings of the ALJ of infringement were not adopted in the final determination by the ITC. The ITC took no position on this findings.

**3.** Defendants raise the issue that Noerr–Pennington immunity may act as a bar to plaintiff's state common law claims. The Second Circuit, while declining to rule on this issue, has suggested that the First Amendment underpinnings of Noerr–Pennington mean that Noerr–Pennington immu-

nity should extend to causes of action, including state statutory unfair competition and common-law claims, other than federal antitrust claims. *Suburban Restoration Co., Inc. v. ACMAT Corp.*, 700 F.2d 98, 101 (2d Cir.1983). However, because plaintiff's common law claims are deficient on other grounds, this court need not address this issue.

prima facie tort, there must be the type of interference with property that is associated with the issuance of a provisional remedy. *Williams v. Williams,* 23 N.Y.2d 592, 298 N.Y.S.2d 473, 477, 246 N.E.2d 333 (1969). Plaintiff argues that its $2 million in attorney's fees and its loss of the ability to enter into third party contracts is sufficient to fulfill this requirement. However, the clear weight of case law is to the contrary. *Chrysler Corp. v. Fedders Corp.* 540 F.Supp. 706, 710 (S.D.N.Y.1982) (allegation that underlying action was brought to interfere with claimant's business failed to state a claim for abuse of process); *Ann–Margret v. High Soc. Magazine, Inc.,* 498 F.Supp. 401, 407 (S.D.N.Y.1980) ("[nor does] expense arising from the litigation constitute the type of interference with person or property necessary to sustain an abuse of process claim"). Moreover, a claim for prima facie tort cannot be maintained if it is nothing more than a rehash of a failed malicious prosecution claim. *Music Center S.N.C. Di Luciano Pisoni & Co. v. Prestini Musical Instruments Corp.,* 874 F.Supp. 543, 547 (E.D.N.Y.1995); *National Nutritional Foods Ass'n. v. Whelan,* 492 F.Supp. 374, 384 (S.D.N.Y.1980). As the court in *Music Center* wrote:

> [I]t is well established that retaliatory lawsuits claiming meritless litigation are not permitted based on a claim of prima facie tort ... In the present case the gravamen of plaintiffs' claim sounds in malicious prosecution, a claim which cannot lie because, inter alia, there existed probable cause for the petition. *Music Center,* 874 F.Supp. at 547.

Accordingly, plaintiff's claims for abuse of process and prima facie tort are dismissed.

## IV. Antitrust claims under New York antitrust law

[11] In its complaint plaintiff also seeks relief under the New York antitrust law, New York General Business Law § 340 (the Donnelly Act). The Donnelly Act is the New York state counterpart to the Sherman Act. The analysis under the Donnelly Act parallels that of the Sherman act. *H.L. Hayden Co. of New York v. Siemens Medical Systems, Inc.,* 672 F.Supp. 724, 745 (S.D.N.Y.

1987), *aff'd,* 879 F.2d 1005 (2d Cir.1989). Therefore, if plaintiff has standing under the Sherman Act to assert antitrust violations, it also has standing under the Donnelly Act. Because plaintiff has no standing to assert a federal antitrust claim, plaintiff has no standing to bring a Donnelly Act claim. Therefore, plaintiff's Donnelly Act claim is dismissed.

## V. Unfair Competition under the Lanham Act

Plaintiff argues that since the Lanham Act has been given broad application, *PPX Enters., Inc. v. Audiofidelity, Inc.,* 746 F.2d 120, 124 (2d Cir.1984), its unfair competition claim should not be dismissed. Defendant Genentech urges that this court apply the strictures of Rule 9(b) to Lanham Act claims, however, the Second Circuit has not held that this court need do so and the Southern District has not applied this rule to Lanham Act claims. In the Eastern District, a plaintiff's Lanham Act claim was dismissed because, "even if Rule 9(b) is not applicable, Barr [plaintiff] is required to state generally the content of the alleged misrepresentations." *Barr Lab., Inc. v. Quantum Parmics. Inc.,* 827 F.Supp. 111 (E.D.N.Y.1993).

█ Even without the strictures of Rule 9(b), this claim is nothing more than a bare recitation of statutory language even after plaintiff amended its complaint. Plaintiff's complaint states in ¶ 85.

> Genentech has unfairly competed with BTG by making false or misleading representations of fact which are likely to cause confusion, mistake or deception as to the approval of the goods or commercial activities of BTG, and by making false or misleading representations of fact in commercial promotion as to the nature, characteristics, qualities of its and BTG's goods or commercial activities within the meaning of Section 43(a) of the Lanham Act.

There are no facts listed to support this claim. It is a well established fact that such claims will be dismissed because they are merely conclusory in nature and legally insufficient. *See Segal v. Gordon,* 467 F.2d 602, 608 (2d Cir.1972); *Telectronics Proprie-*

*tary, Ltd., v. Medtronic, Inc.,* 687 F.Supp. 832, 838 (S.D.N.Y.1988). Accordingly, plaintiff's Lanham Act claim is dismissed.

### VI. Common Law Unfair Competition claim

The scope of New York unfair competition law is closely analogous to that of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). See, *King v. Allied Vision, Ltd.,* 807 F.Supp. 300, 304 (S.D.N.Y.1992) (Motley, J.) The New York unfair competition law covers a wide variety of practices which plaintiff argues includes the bringing of the ITC action, the Delaware action, false press releases about the outcome of the ITC action, and filing a counterclaim against BTG in this court.

However, none of these acts are recognized predicates for an unfair competition claim under New York law. To state a proper claim for common law unfair competition, the plaintiff must allege "representations or conduct which deceive the public into believing that the business name, reputation or good will of one person is that of another." *Ball v. United Artists Corp.,* 13 A.D.2d 133, 139, 214 N.Y.S.2d 219, 225 (1st Dep't 1961); *American Footwear Corp. v. General Footwear Co. Ltd.,* 609 F.2d 655, 662 (2d Cir. 1979), *cert. denied,* 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980). Therefore, plaintiff's common law unfair competition claim is dismissed.

### VII. Res Judicata or Preclusive Effect of ITC Proceeding

Plaintiff claims that the ITC's dismissal of Genentech's complaint with prejudice as a sanction for its misconduct bars and otherwise precludes the relitigation of claims of patent infringement against plaintiff under the doctrines of res judicata and for claim preclusion. The preclusive effect of res judicata is conferred on decisions of the ITC that do not involve patent validity issues. *In Aunyx Corp. v. Canon U.S.A. Inc.,* 978 F.2d 3 (1st Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993), the court barred a Sherman Act claim under res judicata doctrine because it had been resolved in a prior ITC proceeding. *See also Union Manufacturing Co., Inc. v. Han Baek Trading Co., Ltd.,* 763 F.2d 42, 45 (2d Cir.1985). Plaintiff argues that the dismissal of defendant Genentech's complaint with prejudice was not a determination of patent validity or invalidity. The dismissal on other grounds should be given res judicata effect and preclude the institution of this suit in district court.

While the determinations of the ITC are given preclusive effect in cases not involving patent validity or invalidity, they have no such effect in patent cases. *In re Convertible Rowing Exerciser Patent Litigation,* 903 F.2d 822 (Fed Cir.), *cert. denied,* 498 U.S. 897, 111 S.Ct. 248, 112 L.Ed.2d 207 (1990); *Tandon Corp. v. ITC,* 831 F.2d 1017 (Fed. Cir.1987); *Lannom Mfg. Co., Inc. v. ITC,* 799 F.2d 1572 (Fed.Cir.1986).

The ITC is authorized under the Trade act of 1974 to investigate unfair import trade practices. Under 28 U.S.C. §§ 1332 and 1337 the ITC has original jurisdiction over antitrust violations and unfair practices in import trade that injure United States industries. Pursuant to that jurisdiction, the ITC has the authority to consider issues of patent validity and enforceability, but only for the purposes of its resolving alleged violations of § 1337. Although patent infringement is a ground for the ITC to find that a party has committed an unfair trade practice under § 1337, the ITC is not empowered under existing law to set aside a patent as being invalid or unenforceable. The ITC may necessarily decide patent issues in resolving questions of unfair import practices under § 1337 but a prior agency determination, even if affirmed by the Federal Circuit, cannot preempt the exclusive jurisdiction of the district courts to resolve patent issues de novo in subsequent litigation. *Tandon,* 831 F.2d at 1019. At most, defendant Genentech is barred from bringing another § 1337 action similar to the ITC action which it previously brought. Defendant's motion to dismiss plaintiff's res judicata claim is granted.

### CONCLUSION

For all of the reasons set forth above, this court dismisses with prejudice plaintiff's claims 2 and 6–12.