CYTYC CORPORATION, Plaintiff,

v.

NEUROMEDICAL SYSTEMS, INC.,
Mark R. Rutenberg and Laurie J.
Mango, M.D., Defendants.

No. 97 Civ. 4642(BDP).

United States District Court,
S.D. New York.

Dierdre M. Daly, Gage & Pavlis, New York City, for Plaintiff.

Joseph Savage, Testa Hurwitz & Thibeault, LLP, Boston, MA, Mark Mester, Latham & Watkins, New York City, for Defendants.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

### INTRODUCTION

Plaintiff Cytyc Corporation ("Cytyc") commenced this action against Neuromedical Systems, Inc. ("NSI") and two of its officers (the "individual defendants"), asserting, among other things, claims under the Lanham Act, 15 U.S.C. § 1125(a), and New York General Business Law §§ 349 and 350. Cytyc has moved to dismiss NSI's First Amended Counterclaim (the "Counterclaim"), in which NSI asserts claims under the Lanham Act, for defamation, and for statutory and common law unfair competition under New York State law. For the reasons that follow, Cytyc's motion is granted in part and denied in part.

### BACKGROUND

Both Cytyc and NSI manufacture and sell products used in the screening of cervical cells to diagnose and detect cervical cancer. Cytyc sells the ThinPrep system, an automated system for the selection of cervical cells. ThinPrep has been approved by the United States Food and Drug Administration ("FDA"). NSI manufactures the Papnet system, a computer imaging device that reexamines cervical cells collected through a conventional pap smear. The Papnet system is used in conjunction with the conventional pap smear. ThinPrep provides an alternative to the pap smear. Cytyc filed this lawsuit on the grounds that NSI and the individual defendants unlawfully disparaged Cytyc and the ThinPrep system. This Court has previ-

ously denied NSI's motion to dismiss the complaint for failure to state a claim.

NSI asserts four "counts" in its Counterclaim.[1] Count 1 alleges that Cytyc violated § 43(a) of the Lanham Act by making false and misleading representations in connection with its promotion of the ThinPrep test. Count 2 charges Cytyc with unfair competition through false advertising and deceptive acts, in violation of New York General Business Law §§ 349 and 350. Count 3 asserts a claim for defamation, in part based on a press release issued by Cytyc on August 8, 1997. Count 4 accuses Cytyc of common law unfair competition as a result of Cytyc's initiation of two lawsuits against NSI.

The core of NSI's Counterclaim is that Cytyc has made numerous false or misleading statements regarding Cytyc, the ThinPrep system, NSI, and Papnet. In support of its Counterclaim, NSI identifies thirty statements in Cytyc advertisements, press releases, or publications that NSI alleges are false or misleading. NSI's presentation of these statements is set forth in Appendix A. In general, NSI criticizes both Cytyc's own representations and the FDA procedures pursuant to which ThinPrep was approved. NSI challenges the integrity, validity, and sufficiency of Cytyc's research and testing in support of its claims about the efficacy of the ThinPrep system. For example, NSI contends that the clinical data on the basis of which the FDA approved ThinPrep was "seriously flawed." NSI identifies numerous potentially serious deficiencies in Cytyc's research. For example, Cytyc's clinical trial, according to NSI, did not "contain a statistically significant number of cases of invasive cervical cancer." NSI further contends that Cytyc's clinical tests did not replicate the conditions under which the ThinPrep system is actually used.

NSI also criticizes the FDA's procedures in reviewing ThinPrep. NSI contends that the medical community did not have an opportunity to respond to Cytyc's application for approval of ThinPrep because the FDA did not hold a public hearing on the application. The FDA failed, according to NSI, to identify numerous shortcomings in the clinical testing of ThinPrep.

As a result of the deficiencies in Cytyc's testing of ThinPrep and the FDA's lack of scrutiny, the medical community, according to NSI, continues to question the efficacy and safety of ThinPrep. Numerous members of the medical community, including individuals affiliated with NSI, have petitioned the FDA for administrative review of ThinPrep.

## DISCUSSION

A district court's function on a motion to dismiss under Fed.R.Civ.P. Rule 12(b)(6) is to assess the legal feasibility of the challenged claims. *Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991). The issue "is not whether [the claimant] will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Dismissal is warranted only where "it appears beyond doubt that the [claimant] can prove no set of facts in support of his claim which would entitle him to relief." *Ricciuti v. NYC Transit Authority,* 941 F.2d 119, 123 (2d Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted)). Allegations contained in the challenged pleading must be accepted as true and construed favorably to the plaintiff. *Walker v. New York,* 974 F.2d 293, 298 (2d Cir.1992). Of course, in ruling on a 12(b)(6) motion in a defamation case, the Court may also consider documents beyond the pleadings, provided that the parties have received notice of the documents. *See Bio–Technology General Corp. v. Genentech, Inc.,* 886 F.Supp. 377, 381 (S.D.N.Y.1995). On a Rule 12(b)(6) motion, the Court may determine as a matter of law whether the alleged statements are in fact actionable. *Church of Scientology v. Eli Lilly & Co.,* 778 F.Supp. 661, 666 (S.D.N.Y. 1991). If the statements are not actionable, the claims must be dismissed. *Trump v.*

---

**1.** Although the Federal Rules of Civil Procedure contemplate "claims" as opposed to "counts," under Rule 8, pleadings are to be "so construed as to do substantial justice." Fed.R.Civ.P. 8(f). Thus, defects in pleadings that do not implicate substantial rights are to be ignored. *See Id.*

*Chicago Tribune,* 616 F.Supp. 1434, 1435 (S.D.N.Y.1985).

*Lanham Act & General Business Law Claims*

■ "Section 43(a) of the Lanham Act proscribes false designations of origin or false or misleading descriptions of fact in connection with any goods in commerce that are likely to cause confusion or that misrepresent the nature, characteristics, qualities, or geographic origin of the goods." *Groden v. Random House,* 61 F.3d 1045, 1051 (2d Cir.1995). To state a claim under the Lanham Act, a party must allege that the challenged statements are "either literally false or ... though literally true ... likely to mislead and confuse consumers." *McNeil–P.C.C., Inc. v. Bristol–Myers Squibb Co.,* 938 F.2d 1544, 1549 (2d Cir.1991). "Subjective claims about products, which cannot be proven either true or false, are not actionable under the Lanham Act." *Lipton v. Nature Co.,* 71 F.3d 464, 474 (2d Cir.1995) (internal quotation and citations omitted). Along the same lines, sections 349 and 350 of the New York General Business Law prohibit, respectively, deceptive acts or practices in the conduct of business and false or misleading advertisements. *See Nordisk A/S v. Becton Dickinson and Co.,* No. 96 Civ. 9506(BSJ), 1998 WL 119691, *8 (S.D.N.Y. Mar.12, 1998) (analysis under § 43(a) of Lanham Act same as under New York General Business Law) (citing *Princeton Graphics Operating, L.P. v. NEC Home Electronics (U.S.A.), Inc.,* 732 F.Supp. 1258, 1267 (S.D.N.Y.1990)).

As a threshold matter, the Court notes that NSI's recounting of purportedly false, misleading, or deceptive assertions, reproduced in Appendix A, distorts many of Cytyc's statements through omitting crucial text, taking statements out of context or otherwise misleadingly excerpting them. For example, NSI states, in Statement 7 from Appendix A, that "Cytyc has made the false and misleading statement that the Thin-Prep test 'significantly improve[s] gynecological screening and diagnostic accuracy.' " In fact, the article from which the quote was taken simply states that the "Cytyc system introduces a new method of sample collection and slide preparation designed to significant-

ly improve gynecological screening and diagnostic accuracy." Presumably, NSI does not dispute that ThinPrep was designed to improve gynecological screening and diagnostic accuracy.

■ To take another example, NSI states that Cytyc "has made the false and misleading statement that in clinical trials, the Thin-Prep test achieved a sixty-eight percent (68%) increase in cases positively diagnosed '[a]t a typical screening site.' " Statement 4, Appendix A. In the actual statement, contained in a press release, Cytyc identified the specific screening site, and the numbers of positive cases diagnosed with the pap smear and with ThinPrep. The inclusion of such specific evidence means that this statement could not be found to be misleading. Nor is the statement false, because it merely restates clinical results accepted by the FDA and on the basis of which the FDA approved ThinPrep.

■ Notwithstanding NSI's abbreviated and misleading recounting of Cytyc's statements, the sufficiency of the Counterclaim is to be judged on the basis of the challenged statements read in their entirety and in context. *See Sandoz Pharmaceuticals v. Richardson–Vicks, Inc.,* 902 F.2d 222, 229–230 (3d Cir.1990) (context is important in evaluating the message conveyed) (internal citations and quotations omitted).

■ Many of the challenged statements are either opinion or puffing, neither of which is actionable. *See, e.g., Lipton v. Nature Co.,* 71 F.3d 464, 474 (2d Cir.1995) (finding claim of "thorough" research to be mere puffing and therefore not actionable); *Bose Corp. v. Linear Design Labs, Inc.,* 467 F.2d 304, 310–311 (2d Cir.1972) (finding claim that "countless hours of research" had produced superior product to be nonactionable puffing). For example, one Cytyc advertisement, referenced by Statement 3 in Appendix A, describes ThinPrep as "the new 'Gold Standard' for cytology laboratories." Similarly, Cytyc elsewhere claims that the ThinPrep system "presents cells with unprecedented clarity." Statement 6, Appendix A. Yet another advertisement states that with the ThinPrep system, cells are preserved "the

way nature made them." Statement 18, Appendix A. Many of the other statements challenged by NSI are also nonactionable opinion. or puffing. *See, e.g.,* Statements 1, 5, 9, 11, 15, 17, 21, Appendix A. Although claims of product superiority may be actionable, the sort of subjective claims of product quality at issue here are nonactionable. *See, e.g., Lipton v. Nature Co.,* 71 F.3d 464, 474 (2d Cir.1995) (finding that subjective product claims not capable of being proved or disproved are nonactionable under the Lanham Act) (quotation and citations omitted).

■ Whatever the merits of NSI's contentions regarding purported deficiencies in the testing and development of ThinPrep, representations by Cytyc that comport substantively with statements approved as accurate by the FDA cannot supply the basis for NSI's claims. *See American Home Products Corp. v. Johnson & Johnson,* 672 F.Supp. 135, 145 (S.D.N.Y.1987) (concluding that FDA approval of statements is defense to competitor's Lanham Act claim).[2] Many of Cytyc's statements that NSI claims are false or misleading are, in fact, consistent with the substantive claims approved by the FDA. For example, NSI identifies as false and misleading the statement by Cytyc that the ThinPrep system produces "a slide that is more accurate and easier to screen than a conventionally prepared slide." Statement 10, Appendix A. The FDA approved the statement that "Specimen quality with the ThinPrep 2000 System is significantly improved over that of conventional Pap smear preparation in a variety of patient populations." To take another example, NSI contends that Cytyc's statement that ThinPrep "identified more positive cases than the Pap smear" is false and misleading. Statement 2, Appendix A. But the FDA has approved the statement that the ThinPrep system is "significantly more effective than the conventional Pap smear for the detection of Low-grade Squamous intraepithelial (LSIL) and more severe lesions in a variety of patient populations." Statements 13, 20, 21, and 26 also express the fact that ThinPrep is "significantly more effective than the conventional

pap smear," and therefore are non-actionable due to the FDA's approval of that claim. Although Cytyc's statements do not correspond precisely to statements that the FDA has approved, the challenged statements discussed above are similar enough to the approved statements for the Court to conclude, as a matter of law, that they are neither false nor misleading. In sum, many of the statements challenged by NSI are non-actionable.

■ However, a small number of the nearly three dozen statements identified by NSI may provide a basis upon which relief may be granted. For example, Cytyc states that the ThinPrep system "facilitates the identification of cell types faster, easier and more accurately." Statement 25, Appendix A. This statement's substantive claim about the speed and ease of ThinPrep compared to the pap smear is not derived from FDA approved statements. Therefore, although many of the statements that NSI challenges are non-actionable, NSI's Lanham Act and General Business Law claims cannot be dismissed at this stage of the proceeding. Statements 2, 3, 4, 6, 7, 10, 11, 13, 15, 17, 18, 20, 21, and 26 are non-actionable, and therefore will not be the subject of discovery or proof at trial.

*Defamation Claim*

■ In order to state a claim for defamation, the claimant must allege facts sufficient to support a finding of a published statement concerning the claimant that is both false and defamatory. *Levin v. McPhee,* 917 F.Supp. 230, 236 (S.D.N.Y.1996) *aff'd,* 119 F.3d 189 (2d Cir.1997); *Brian v. Richardson,* 87 N.Y.2d 46, 637 N.Y.S.2d 347, 350, 660 N.E.2d 1126 (Ct.App.1995). Expressions of opinion are non-actionable. *Id.* There is no bright line, of course, that separates fact and opinion, in part because "expressions of 'opinion' may often imply an assertion of objective fact." *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990).

■ Under New York law, courts rely upon three factors to distinguish fact from

---

**2.** This conclusion is not undermined by the possibility, as asserted by NSI, that there is a continu-

ing debate about the safety and efficacy of the ThinPrep system.

opinion: 1) whether the challenged statements have a precise and readily understood meaning; 2) whether the statements are susceptible of being proven false; and 3) whether the context signals to the reader that the statements are more likely to be expressions of opinion rather than fact. *Levin v. McPhee*, 119 F.3d 189, 196 (2d Cir.1997). A defamation claim may not arise on the basis of "rhetorical hyperbole," *Milkovich*, 497 U.S. at 16–17, 110 S.Ct. 2695 (citing *Greenbelt Cooperative Publishing Assn. v. Bresler*, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970)), or statements that are used in a loose, figurative, or imaginative sense. *Milkovich*, 497 U.S. at 17 (citing *Letter Carriers v. Austin*, 418 U.S. 264, 284–286, 94 S.Ct. 2770, 41 L.Ed.2d 745 (1974)).

 NSI bases its defamation claim in part on Cytyc's August 8, 1997 press release, which was headlined "Cytyc Suspects Competitive Mischief." The press release states that "[c]ertain of the petitions [filed for administrative review of the FDA approval of ThinPrep] appear to be filed by, or at the request of, competitors of Cytyc." The press release then notes that an official of NSI filed one of the petitions for administrative review.

In the next paragraph, the president of Cytyc is quoted as saying: "We continue to be disappointed with the actions of certain competitors and believe that these petitions are an attempt to distract us during our commercial launch of" ThinPrep. Cytyc's president noted that: "The issues raised in these petitions were thoroughly reviewed by FDA during that extensive pre-market approval application review process." Cytyc's president then concluded that "We are confident that these petitions are frivolous and without merit." NSI contends that the press release is false and defamatory in that it implicitly accuses NSI of competitive mischief.

The press release does not provide a basis for NSI's defamation claim because the statements it contains are either true or nonactionable opinion. NSI does not dispute that a representative of NSI filed one of the petitions and that NSI is a competitor of Cytyc. The statements of Cytyc's president

about the likely purpose of the petitions are not actionable because they merely express an opinion about matters not readily susceptible to proof. These statements are protected expressions of opinion that communicate what Cytyc believes to be the purpose of some of the petitions filed with the FDA. Moreover, Cytyc's president did not say that the petitions are necessarily frivolous, only that Cytyc believed them to be so. *See Groden v. Random House, Inc.*, 61 F.3d 1045, 1051 (2d Cir.1995) (description of author as "guilty of misleading the American public" held to be statement of non-actionable opinion).

The context in which the statements about the purpose of the petitions appeared would suggest to the reader that the statements were meant to be understood as opinion rather than fact. *See Levin v. McPhee*, 119 F.3d at 197 (looking to the context in which statements are made in order to evaluate the impact the statements would have on a reasonable reader). The very headline of the press release—"Cytyc Suspects Competitive Mischief"—signals to the reader that the press release will relay Cytyc's suspicions or opinions, rather than verifiable fact. *See id.* (conjecture, hypothesis, or speculation indicate that statements are opinion rather than fact).

To the extent that the opinions expressed in the press release imply the assertion of objective fact, the statements are not actionable because they disclose "the facts on which [they] are based." *Levin v. McPhee*, 119 F.3d at 197 (citations omitted). Cytyc's president offered the basis for the conclusion that the petitions are without merit: that the FDA had thoroughly reviewed the issues raised in the petitions. Additionally, with respect to NSI in particular, the press release states that Cytyc had pending litigation against a division of NSI. In sum, the press release does not provide a basis for a defamation claim because the statements contained within it are either true or nonactionable opinion.

None of the other statements challenged by NSI, which are identified in Appendix A, provide a basis for its defamation claim because none of those statements are about

NSI. *See Weldy v. Piedmont Airlines, Inc.*, 985 F.2d 57, 61–62 (2d Cir.1993) (statement must regarding or concerning the plaintiff in order to be actionable). Rather, the challenged statements, other than those in the press release, relate solely to Cytyc's Thin-Prep product and to the pap smear technique. Therefore, NSI's defamation claim is hereby dismissed.

*Common Law Unfair Competition*

 NSI's fourth claim is for common law unfair competition primarily on the basis of Cytyc's filing of this and one other lawsuit against NSI. It is uncertain whether the initiation of litigation may provide a basis for an unfair competition claim under New York common law. *See Bio–Technology General Corp. v. Genentech, Inc.*, 886 F.Supp. 377, 384 (S.D.N.Y.1995)(wrongful filing of lawsuit not a predicate for unfair competition claim under New York law).

Accepting NSI's position that the filing of meritless lawsuits may form the basis of an unfair competition claim under New York law, NSI has not adequately alleged that either of Cytyc's lawsuits was brought in bad faith. The first lawsuit filed by Cytyc against NSI was dismissed for lack of personal jurisdiction. In this lawsuit, the Court, as noted above, previously denied NSI's motion to dismiss Cytyc's complaint for failure to state a claim. Because NSI has alleged no facts sufficient to support a finding that this lawsuit is a sham or baseless or that Cytyc initiated the litigation in bad faith and only to harm NSI's reputation and business, the initiation of this litigation may not form the basis for a claim of unfair competition against Cytyc. *See Bio–Technology General Corp. v. Genentech, Inc.*, 886 F.Supp. at 380–381 (to demonstrate sham lawsuit in antitrust context, defendant must show that lawsuit is objectively baseless and not legally viable and is merely an attempt to interfere with defendant's business relationships) (quoting *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 59–61, 113 S.Ct. 1920, 1928, 123 L.Ed.2d 611 (1993)); *Gemveto Jewelry, Inc. v. Jeff Cooper Inc.*, 568 F.Supp. 319, 336 (S.D.N.Y. 1983) (requiring evidence that plaintiff "knew" its claims to be meritless in order for filing of two lawsuits to give rise to unfair competition claim).

However, NSI has stated a viable claim for unfair competition based on certain of the statements identified in Appendix A, which NSI contends are false or misleading. As discussed above, although many of the challenged statements are non-actionable, certain of the remaining statements may provide a basis upon which relief could be granted. NSI's claim for common law unfair competition thus cannot be dismissed at this stage of the litigation. However, as noted above with respect to NSI's Lanham Act and General Business Law claims, statements 2, 3, 4, 6, 7, 10, 11, 13, 15, 17, 18, 20, 21, and 26 are non-actionable, and therefore will not be the subject of discovery or proof at trial on defendants' claim for common law unfair competition.

## CONCLUSION

For the reasons stated, plaintiff's motion to dismiss NSI's First Amended Counterclaim is granted as to NSI's claim for defamation and otherwise denied. The Clerk of the Court is directed to dismiss NSI's claim for defamation.

**SO ORDERED.**

## *APPENDIX A*

- 1. Cytyc has made the false and misleading statement that the ThinPrep test is a "simple improvement to the Pap smear."

- 2. Cytyc has made the false and misleading statement that "the ThinPrep Pap Test identified more positive cases than the Pap smear."

- 3. Cytyc has made the false and misleading statement that the ThinPrep test "represent[s] the new 'Gold Standard' for cytology laboratories."

- 4. Cytyc has made the false and misleading statement that in clinical trials, the ThinPrep test achieved a sixty-eight percent (68%) increase in cases positively diagnosed "[a]t a typical screening site."

- 5. Cytyc has made the false and misleading statement that the ThinPrep test is

the "first clear advance in 50 years of Pap testing."

- 6. Cytyc has made the false and misleading statement that the ThinPrep test "presents cells with unprecedented clarity."

- 7. Cytyc has made the false and misleading statement that the ThinPrep test "significantly improve[s] gynecologic screening and diagnostic accuracy."

- 8. Cytyc has made the false and misleading statement that the ThinPrep test "controls cellular density, maintains uniform cellular distribution and enhances the presentation of cellular morphology."

- 9. Cytyc has made the false and misleading statement that the ThinPrep test "accurately represents and reveals the patient's true medical condition."

- 10. Cytyc has made the false and misleading statement that the result of the ThinPrep test method "is a slide that is more accurate and easier to screen than a conventionally prepared slide."

- 11. Cytyc has made the false and misleading statement that the ThinPrep test slides "ensure that all cells and cell groups can be examined easily."

- 12. Cytyc has made the false and misleading statement that the ThinPrep test "solution preserves the morphologic detail of the cells so that a correct diagnosis can be rendered after fixing, staining and reading the slide."

- 13. Cytyc has made the false and misleading statement that the ThinPrep test "results in better representation of the cells removed from the patient."

- 14. Cytyc has made the false and misleading statement that the ThinPrep test slides contain a number of epithelial cells "well within the range of cell counts found on conventional smears."

- 15. Cytyc has made the false and misleading statement that the ThinPrep test "promotes efficient utilization of personnel" by allowing laboratory workers to "devote more time to quality control, examination of additional samples, or other activities."

- 16. Cytyc has made the false and misleading statement that "[s]ince the Tran-

sCyt® filters used in the process have a nominal pore size of less than 8 micrometers, the smaller cell lesions, which range from 11–18 micrometers with an average of 14.7 micrometers, will not pass through the filter."

- 17. Cytyc has made the false and misleading statement that the ThinPrep test "overcomes the limitations of the conventional method."

- 18. Cytyc has made the false and misleading statement that the ThinPrep test permits medical personnel to "see cells the way nature made them."

- 19. Cytyc has made the false and misleading statement that the TransCyt Filter creates "currents in the fluid that are strong enough to separate randomly joined material and disperse mucus, but gentle enough to have no adverse effect on cellular morphology or diagnostic clusters."

- 20. Cytyc has made the false and misleading statement that the ThinPrep system offers a "superior method of slide preparation that produces improved diagnostic quality, resulting in better patient outcome."

- 21. Cytyc has made the false and misleading statement that "[w]ith the ThinPrep system, the highest quality results are available without the need for additional staffing and associated costs."

- 22. Cytyc has made the false and misleading statement that the ThinPrep system's "unparalleled slide preparation quality and consistency provides [sic] the laboratory with a number of technological, operational and economic advantages."

- 23. Cytyc has made the false and misleading statement that with the ThinPrep system "[s]amples are easily collected and preserved, maintaining specimen integrity, preserving morphologic detail and insuring maximum quality control."

- 24. Cytyc has made the false and misleading statement that "one ThinPrep slide contains as much information as multiple conventionally prepared slides."

- 25. Cytyc has made the false and misleading statement that the ThinPrep system

"facilitates the identification of cell types faster, easier and more accurately."

26. Cytyc has made the false and misleading statement that "utilizing the ThinPrep system also experience [sic] a reduction in the number of unsatisfactory or difficult-to-screen cases."

27. Cytyc has made the false and misleading statement that the ThinPrep system's "slide to slide uniformity makes interpretation easier and more efficient."

28. Cytyc has made the false and misleading statement that "[u]nlike traditional Pap smears...the ThinPrep Pap Test enables the physician to preserve a majority of the cells collected."

29. Cytyc has made the false and misleading statement that "[i]mportant background material is retained with the ThinPrep Pap Test."

75 30. Cytyc has made the false and misleading statement that there are more cells on ThinPrep slides than on a Pap smear slide, in spite of the fact that the opposite is true.