Eastern Effects, Inc. v 3911 Lemmon Ave. Assoc., LLC
2026 NY Slip Op 03386
June 2, 2026
Appellate Division, First Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

Eastern Effects, Inc., Plaintiff-Respondent,
v
3911 Lemmon Avenue Associates, LLC, et al., Defendants-Appellants, Gowanus Canal Environmental Remediation Trust #2, Defendant.

Decided and Entered: June 02, 2026
Index No. 652152/22|Appeal No. 6772|Case No. 2025-00337|
Before: Moulton, J.P., Kapnick, GonzáLez, Shulman, Chan, JJ.

Fox Rothschild LLP, New York (Brett A. Berman of counsel), for appellants.
Kasowitz LLP, New York (Edward E. Filusch of counsel), for respondent.

[*1]
Order, Supreme Court, New York County (Nancy M. Bannon, J.), entered on or about December 16, 2024, which denied the motion of defendants 3911 Lemmon Avenue Associates, LLC, Esbond Realty LLC, and Eponymous Gowanus, LLC pursuant to CPLR 3025(b) and (c) for leave to file a first amended answer with counterclaims, unanimously affirmed, without costs.
This action concerns various disputes arising out of a lease agreement between plaintiff and defendants, as well as a settlement agreement entered into by the parties relating to construction work at the leased property undertaken by defendants. Since January 6, 2010, plaintiff has leased building space from defendants for use as a film and television studio. As relevant here, the leased space is located along the Gowanus Canal in Brooklyn, which the Environmental Protection Agency (EPA) designated in 2010 as a Superfund site.
On April 11, 2019, the EPA issued an administrative order requiring a remediation construction project along the canal. Defendants elected to perform the construction work themselves to maintain aesthetic control over their property, including the leased space. Following the EPA's order, plaintiff refused to vacate the premises to permit defendants' construction work unless it received a substantial payment to compensate for potential revenue loss arising from the impact this work would have on its business. To resolve this dispute, plaintiffs, defendants, and several additional nonparty entities entered into a settlement agreement and release. Under the settlement agreement, defendants agreed to compensate plaintiff for monthly rent, real estate taxes, common area maintenance fees, utilities, and lost business, and to make reasonable repairs to the leased space before returning it to plaintiff's possession. The parties further agreed that the settlement agreement "contain[ed] the entire understanding among the Parties and supersedes any prior written or oral agreements between them, respecting the subject matter of this Agreement," and that "[e]xcept as otherwise expressly provided in this Agreement, there are no representations, agreements, arrangements, or understandings, oral or written, between the Parties relating to the subject matter of this Agreement that are not fully set forth herein."
[*2]
On January 31, 2022, after beginning the construction work, defendants purportedly discovered issues with the building's structural integrity and notified plaintiff that they were exercising their right under the lease to choose not to restore or rebuild the premises. Plaintiff, in turn, commenced this action on May 6, 2022, asserting claims for, among other things, breach of the lease, breach of the settlement agreement, and fraudulent inducement to enter into the settlement agreement. In response, defendants moved to dismiss, among other things, the fraud claim on the basis that the settlement agreement's merger and "no representations" clauses barred it. By order entered November 30, 2022, the motion court agreed and dismissed the claim. On January 3, 2023, defendants filed their answer with two counterclaims.
While its motion to dismiss was pending, defendants notified plaintiff that the premises would be demolished. As a result, on February 1, 2023, plaintiff moved for a temporary restraining order (TRO) and preliminary injunction to prevent defendants from demolishing the premises. In support, plaintiff averred that it could not survive the financial impact that would be caused by the interruption to its business. By order entered February 2, 2023, the motion court granted the TRO on the condition that plaintiff post a $1 million bond. However, on February 8, 2023, the court vacated the TRO after plaintiff failed to comply with the bond requirement.
Defendant later moved on November 20, 2024, to amend their counterclaims pursuant to CPLR 3025(b) and (c) to add claims for fraud and abuse of process. In support, defendants averred they had learned during discovery that plaintiff's statements concerning its ability to operate its business were false and that plaintiff sought a TRO solely to extort a large settlement payout. Defendants further maintained that plaintiff filed its lawsuit to harass defendants, force them to incur attorneys' fees, and pressure them into giving plaintiff a windfall payout.
The motion court properly denied defendants' motion because the proposed counterclaims lack merit (see Thomas Crimmins Contr. Co. v City of New York, 74 NY2d 166, 170 [1989]). The proposed fraud counterclaim, which was based on plaintiff's allegedly false statements that were intended to induce defendants into entering into the settlement agreement, was barred by the "no representations" clause in the agreement. Plaintiff's statements were unquestionably related to the subject matter of that agreement, which addressed plaintiff's purported inability to conduct work at the leased premises and plaintiff's losses should it be excluded from the premises (see WT Holdings Inc. v Argonaut Group, Inc., 127 AD3d 544, 544 [1st Dept 2015]).
[*3]
The motion court also properly denied leave to amend to assert an abuse of process claim. Neither of the two factual predicates for the claim — namely, plaintiff's commencement of the action and its initially successful attempt to obtain a TRO preventing defendants from destroying the building — sufficiently support the cause of action. To start, a summons and complaint are not considered the type of process that is capable of being abused (see Curiano v Suozzi, 63 NY2d 113, 116 [1984]; Espinoza v A S K Std. Tr. Corp., 226 AD3d 564, 565 [1st Dept 2024]). Meanwhile, regarding plaintiff's procurement of a TRO, the only monetary injuries identified by defendants were attorneys' fees and a "windfall payout," which defendants described as "a large settlement payout." However, neither category of damages constitutes the kind of harm necessary to sustain an abuse of process claim (see Stroock & Stroock & Lavan v Beltramini, 157 AD2d 590, 591 [1st Dept 1990]; see also Bio-Technology. Gen. Corp. v Rogers & Wells, 886 F Supp 377, 382-383 [SD NY 1995], appeal dismissed 66 F3d 344 [2d Cir 1995]; Ann-Margret v High Society Magazine, Inc., 498 F Supp 401, 407 [SD NY 1980]). In any event, to the extent it was tied to the application for a TRO, defendants' abuse of process claim was barred by the claim's one-year statute of limitations (see CPLR 215 [3]; Busiello v Whelan, 240 AD3d 736, 737 [2d Dept 2025]). Specifically, the restraint was vacated on February 8, 2023, yet defendants did not move for leave to assert their counterclaim until November 20, 2024 (see Beninati v Nicotra, 239 AD2d 242, 242 [1st Dept 1997]; see also 10 Ellicott Sq. Ct. Corp. v Violet Realty, Inc., 81 AD3d 1366, 1368-1369 [4th Dept 2011], lv denied 17 NY3d 704 [2011]).
Finally, even assuming for the sake of argument that defendants' proposed counterclaims had merit, the motion court providently exercised its discretion in denying the motion, as plaintiff would suffer prejudice if it had to defend against defendants' proposed new claims. The court had originally set a note of issue deadline of October 6, 2023. Discovery deadlines in this action were then extended several times until October 3, 2024, when the court set a January 7, 2025 note of issue deadline and a December 23, 2024 discovery end date. Mere weeks after the October 3, 2024 extension, defendants made their motion. Given the late stage of proceedings at the time of the motion, plaintiff would have been unable to depose defendants' corporate representatives to determine whether and how defendants relied on the allegedly fraudulent statements. Thus, plaintiff demonstrated the prejudice necessary to deny the motion (see Biondi v Behrman, 149 AD3d 562, 564 [1st Dept 2017], lv dismissed in part & denied in part, 30 NY3d 1012 [2017]).
We have considered defendants' remaining arguments and find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 2, 2026