**BELLY BASICS, INC., Plaintiff,**

v.

**MOTHERS WORK, INC. Defendant.**

**No. 99 CIV. 11751 RO.**

United States District Court,
S.D. New York.

April 12, 2000.

Phillips, Nizer, Benjamin, Krim & Ballon LLP, New York City, Theodore C. Max, for Plaintiff.

Pepper Hamilton LLP, Philadelphia, PA, Thomas E. Zemaitis, for Defendant.

### OPINION AND ORDER

OWEN, District Judge.

Plaintiff Belly Basics, Inc. claims that defendant Mothers Work, Inc., was again engaged in trademark infringement and unfair competition by copying plaintiff's trade dress for its quite successful line of

maternity wear, and that Mothers Work, which plaintiff had written to asserting infringement in 1995, had breached the resulting 1995 settlement agreement as well.

On December 3, 1999, plaintiff applied for a Temporary Restraining Order, and after a hearing, I granted it, finding that an appropriate showing had been made of plaintiff's likelihood of success at a trial that Mothers Work had *in 1999* infringed Belly Basics' trade dress and violated the 1995 settlement agreement as well.[1] A week later, December 10, the parties by stipulation converted the TRO into a preliminary injunction. That same day, Belly Basics, the prevailing party, issued a press release commenting on the litigation. This press release included the following: "Said co-founder Jody Kozlow Gardner, 'What is particularly upsetting about this whole affair is that Mothers Work seems not to care in the least about its legal agreements. In the past, we entered into a Settlement Agreement on this same issue.' "

In its answer, Mothers Work now asserts a counterclaim for defamation, alleging that the above statement constitutes libel per se. Belly Basics now moves to dismiss the counterclaim under Fed. R.Civ.P. 12(b)(6). For the reasons set forth below, its motion is granted.

On a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court should dismiss a claim only if it appears beyond doubt that the claimant can prove no set of facts which would entitle him to relief. *King v. Simpson*, 189 F.3d 284, 286 (2d Cir.1999). I must accept as true all of the factual allegations of the claim and draw all reasonable inferences in favor of the claimant. *See id.*

■ Under New York law,[2] "[i]n order to state a claim for defamation, the claimant must allege facts sufficient to support a finding of a published statement concerning the claimant that is both false and defamatory." *Cytyc Corp. v. Neuromedical Sys., Inc.*, 12 F.Supp.2d 296, 301 (S.D.N.Y.1998). A statement of pure opinion is not actionable. *Levin v. McPhee*, 119 F.3d 189, 195 (2d Cir.1997); *Cytyc Corp.*, 12 F.Supp.2d at 301. There is no bright line test to aid in determining whether a statement is one of opinion or fact, as "expressions of 'opinion' may often imply an assertion of objective fact." *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990). In New York, this determination is a matter for the Court. *Levin*, 119 F.3d at 196; *Gross v. New York Times Co.*, 82 N.Y.2d 146, 154, 603 N.Y.S.2d 813, 817, 623 N.E.2d 1163, 1167 (1993).

■ New York law dictates a three factor test to distinguish statements of fact from statements of opinion: "1) whether the challenged statements have a precise and readily understood meaning; 2) whether the statements are susceptible of being proven false; and 3) whether the context signals to the reader that the statements are more likely to be expressions of opinion rather than fact." *Cytyc Corp.*, 12 F.Supp.2d at 301–02 (citing *Levin*, 119 F.3d at 196). A mechanical application of these facts is not appropriate, however. Rather, I must look to the overall context in which the statement was made and determine whether a reasonable reader would believe that the statement was conveying objective facts about the claimant. *Flamm v. American Ass'n of Univ. Women*, 201 F.3d 144, 153 (2d Cir.

---

1. The plaintiff's packaging in 1995 (Figure A, below left), as to which defendant settled an infringement claim in 1995, was virtually unchanged by 1999 (Figure B, below right), as to which this suit was brought

2. Although Mothers Work contends that Pennsylvania law applies, for the purposes of this motion, I apply New York law, because, as Mothers Work agrees, "Pennsylvania law does not differ materially from New York law on this question, [so] it is unnecessary to resolve this conflict of law issue at this point in time." (Def.'s Mem. in Opp. at 6 n. 3).

2000) (citing *Brian v. Richardson*, 87 N.Y.2d 46, 51, 637 N.Y.S.2d 347, 351, 660 N.E.2d 1126, 1130 (1995)). If a reasonable reader could so conclude, it is actionable. *See Levin*, 119 F.3d at 196–97. In contrast, "[w]hen the [challenged] statements, read in context, are readily understood as conjecture, hypothesis, or speculation, this signals the reader that what is said is opinion, and not fact." *Id.* at 197. Moreover, statements of "rhetorical hyperbole" or "imaginative expression", those which cannot reasonably be interpreted as stating actual facts, are not actionable. *See Milkovich*, 497 U.S. at 20, 110 S.Ct. 2695 (quotation omitted).

▪ Plaintiff argues that the context and language of the statement clearly shows that it is an expression of Gardner's subjective opinion, and as such, it is not actionable. Defendant, however, contends that the statement "impl[ies] an assertion of objective fact" as to all agreements, *in the plural.* But the statement, which is but one paragraph of a lengthy press release,[3] in its entirety, reads:

> Said co-founder Jody Kozlow Gardner, "What is particularly upsetting about this whole affair is that Mothers Work seems not to care in the least about honoring its legal agreements.[4] In the past, we entered into a settlement agreement on this same issue. Then, this past summer, they had expressed interest in acquiring us and we signed a confidentiality agreement before sharing sensitive and confidential information.

---

**3.** A copy of the press release appears as Appendix A.

**4.** [By the Court] Defendant seeks, by extensive argument, to show that an ordinary reader would the "s" in "legal agreements" and carry it over to the later-mentioned "confidentiality agreement", but the language does not support defendant's assertion that the quotation attributed to Gardner was asserting either as opinion or fact that the confidentiality agreement had been dishonored.

**5.** The settlement agreement provides as follows:

We declined their offer and then learned of their infringing actions.

(Max Aff. Ex. D at 1). Thus, defendant's claim boils down to its contention that the use of the words "legal agreements" in the plural in the press release followed by the later mention of the confidentiality agreement implies the statement of an objective fact as to the confidentiality agreement and perhaps other agreements as well.

Drawing all inferences in favor of Mothers Work, I nonetheless find that a reasonable reader would not conclude that the statement conveys that Gardner is asserting an objective fact that Mothers Work breached the confidentiality agreement or any agreement *other than the settlement agreement.* Under the settlement agreement, defendant agreed not to manufacture or sell any product which has a package design and markings that are confusingly similar to or is likely to cause confusion with the package design and markings employed by Belly Basics on its "The Pregnancy Survival Kit."[5] However, in the fall of 1999, Mothers Work did again begin packaging its Essentials products in a dress this Court has found confusingly similar or likely to cause confusion. This finding is support for Gardner's redolent expression of opinion on the litigation, and understandable at that. This becomes even clearer upon examination of the overall context—the press release sets forth and discusses plaintiff's claims of infringement and breach of the settlement agreement. Gardner's comment is the only mention of

[Mothers Work, Inc.,] "together with its agents, employees, successors, officer and assigns, agree not to import, manufacture, sell, offer for sale and distribute, in any fashion and through any means whatsoever, any product which as a package design and markings that are confusingly similar to or is likely to cause confusion with the package design and marking employed by Belly Basics on its "Pregnancy Survival Kit" or any of Belly Basics' trademarks, including, but not limited to, "The Pregnancy Survival Kit", "Belly Basics", and the distinctive clothesline and "Belly Basics" logo."

the confidentiality agreement, and does so in separately setting out the chronology of dealings between the parties.

Finally, in reading the press release in its entirety, a reasonable reader—the average and ordinary reader—would not, I conclude, engage in the referential and inferential processes defendant is necessarily forced to recite as being required to analyze the "clever juxtaposition" and conclude that Gardner has knowledge of facts leading to the conclusion that Mothers Work "cannot be trusted in its business dealings generally" and that Mothers Work breached the confidentiality agreement. (Def.'s Mem. in Opp. at 3). Moreover, the defendant's tortured recital to try to demonstrate this but reinforces the contrary view. *See Independent Living Aids,* *Inc. v. Maxi–Aids, Inc.,* 981 F.Supp. 124, 128 (E.D.N.Y.1997) ("If the words are not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction."). Thus, I find that the reasonable reader, considering the words as they are commonly understood and viewing them in the overall context of the press release, would at most conclude only that the statement is Gardner's opinion that Mothers Work breached the settlement agreement, and not objective fact as to *all* agreements. Accordingly, Belly Basics' motion to dismiss the counterclaim asserting this as actionable defamation is granted, and it is hereby dismissed.

So ordered.

## APPENDIX A

FROM:     Belly Basics
                276 Fifth Avenue
                New York, NY 10001

CONTACT:   Rubenstein Assoc. Inc.
                Marcia Horowitz (212)843-8014
                Robin Waggs (212) 843-8006

FOR IMMEDIATE RELEASE

## COURT ORDERS MATERNITY RETAIL GIANT "MOTHERS WORK" TO STOP SELLING KNOCK-OFF OF BELLY BASICS' FAMOUS "THE PREGNANCY SURVIVAL KIT®"

### INJUNCTION ISSUED AGAINST MIMI MATERNITY IN RESPONSE TO COMPLAINT OF TRADEMARK INFRINGEMENT

(New York, December 10, 1999)...New York-based Belly Basics, Inc., the successful creator of the famous "The Pregnancy Survival Kit®," has been granted a temporary restraining order (TRO) against the Philadelphia-based maternity giant Mothers Work, Inc., owners of the Mimi Maternity, Pea in the Pod and Maternite retail outlets. By a stipulation and order dated December 9, the TRO has been converted into a preliminary injunction.

The injunction [99 CIV. 11751 (RO)], issued by the U.S. District Court for the Southern District of New York, is a result of an order to show cause issued in response to an action filed by Belly Basics against Mothers Work for trademark infringement, unfair competition and breach of settlement agreement.

Notes Belly Basics co-founder Cherie Serota, "We are very grateful that the Court has recognized the importance of our famous trade dress and the importance of the groundbreaking white "kit" box. We started this company as two young fashion executives with a novel idea that no one else had. I had just had a baby and Jody was on the verge of her pregnancy when we masterminded the birth of The Pregnancy Survival Kit®. We spent years developing and perfecting our company's marketing concept and trade identity. Our tremendous success and virtually universal acceptance in the marketplace reinforces the strength of our brand and our commitment to design and quality. Mothers Work certainly is a lot larger than us, but we are not going to sit back and watch them take our concept as theirs."

Said co-founder Jody Kozlow Gardner, "What is particularly upsetting about this whole affair is that Mothers Work seems not to care in the least about honoring its legal agreements. In the past, we entered into a settlement agreement on this same issue. Then, this past summer, they had expressed interest in acquiring us and we signed a confidentiality agreement before sharing sensitive and confidential information. We declined their offer and then learned of their infringing actions."

The complaint alleges that Mothers Work, among other things: without permission, willfully and with the intention of benefiting from the reputation of The

Pregnancy Survival Kit® (a) imitated the shape, coloring and size, style, layout copy and design of Belly Basics distinctive packaging and trade dress; and (b) infringed Belly Basics' clothesline trademark; and (c) breached the Settlement Agreement between Belly Basics and Mothers Work dated July 8, 1995.

Belly Basics Attorney, Theodore C. Max of Phillips, Nizer Benjamin, Krim & Ballon LLP, commented "A few months after Belly Basics introduced The Pregnancy Survival Kit® in 1994, Mothers Work was directed to cease and desist from infringing upon the Belly Basics distinctive trade dress by selling a knock-off product. The parties eventually entered into a settlement agreement. Belly Basics brought this action to enforce that agreement and protect the famous The Pregnancy Survival Kit® trade dress from infringement and dilution. The Court's order protects Belly Basics trademarks and good will."

Belly Basics revolutionized the maternity clothing industry by being the first to deliver chic, simple and easily accessible maternity clothes. The line is carried by such high-end department stores as Bloomingdale's and Nordstrom who also have heavily supported and advertised the groundbreaking products. Belly Basics was conceived in 1994 by Cherie Serota and Jody Kozlow Gardner while they were running the marketing department of Henri Bendel. In addition to the very successful clothing line, the women also recently authored the book Pregnancy Chic: The Fashion Survival Guide and have appeared on numerous television talk shows and in newspaper and magazine articles.

###

Figure A

Figure B