**SCHOLASTIC, INC., J.K. Rowling, and Time Warner Entertainment Company, L.P., Plaintiffs and Counterclaim Defendants,**

v.

**Nancy STOUFFER, Defendant and Counterclaim and Crossclaim Plaintiff,**

v.

**ABC Corporations (1 through 99), Crossclaim Defendants.**

**No. 99 Civ. 11480(AGS).**

United States District Court, S.D. New York.

Dec. 5, 2000.

Edward H. Rosenthal, Jessie F. Beeber, Mark Boyland, New York City, for Scholastic, Inc., J.K. Rowling, plaintiffs.

Dale M. Cendali, Claudia Ray, New York City, for Time Warner Entertainment Co., plaintiff.

Mark Abate, Kimber Wilson, New York City, Kevin R. Casey, Benjamin E. Leace, Valley Forge, PA, for defendants.

## OPINION AND ORDER

SCHWARTZ, District Judge.

This action centers on certain intellectual property rights related to the *Harry Potter* series of books, which are written, published and marketed by plaintiffs. Plaintiffs and counterclaim defendants Scholastic, Inc. ("Scholastic"), J.K. Rowling ("Rowling"), and Time Warner Enter- tainment Company ("TWE") (collectively, "plaintiffs") request a declaratory judgment that (i) they have not infringed and are not infringing any of defendant and counterclaim plaintiff Nancy Stouffer's ("Stouffer's") copyrights or trademarks, and (ii) Stouffer has falsely represented her copyright and trademark rights. By way of counterclaim, Stouffer asserts violations under federal and state law for trademark infringement, copyright infringement, false representation, false designation of origin, unfair competition, injury to business reputation, and tortious interference with business relations. Currently before the Court is plaintiffs' motion to dismiss all of Stouffer's counterclaims except those for copyright and trademark infringement, pursuant to Fed. R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"). For the reasons set forth below, the motion is granted in part and denied in part.

## I. Factual Background

Scholastic is a New York corporation with its principal place of business in New York; Rowling is an individual residing in Edinburgh, Scotland; and TWE is a Delaware limited partnership with its principal place of business in New York. (Complaint ¶¶ 2–4.) Rowling is the author of the *Harry Potter* series of books, and purportedly is the owner of all copyrights, trademarks, and service marks associated with the series; Scholastic is the U.S. publisher and distributor of the *Harry Potter* books; and TWE owns the film and merchandising rights in two of the *Harry Potter* books, and purportedly is the exclusive owner of various trademarks derived from the *Harry Potter* books in connection with the film, and ancillary merchandising projects. (*Id.* ¶¶ 2–3, 12–15.) Stouffer is an individual who is a citizen and resident of the state of Pennsylvania.[1] (Stouffer's First

---

1. Crossclaim defendants ABC Corporations (1 through 99) are corporations created and existing under the laws of different states that are contractually linked to one or more of the plaintiffs. (Crossclaims ¶¶ 48–51.) Stouffer states that the crossclaims will be amended to substitute the corporations' "correct legal names" as they become available. (*Id.* ¶ 48.)

Amended Answer, Counterclaims, and Crossclaims ("Counterclaims") ¶ 44.)

The series of *Harry Potter* books tells the story of a boy named Harry Potter, who lives with his hated aunt, uncle and cousin, all of whom are known as "Muggles," connoting humans without magical abilities. (Complaint ¶ 10.) Harry, who has magical ability, leaves his home and makes new friends, travels, and has many adventures. *(Id.)* The *Harry Potter* books published to date in the United States chronicle these adventures. *(Id.)* These books are: (i) *Harry Potter and the Sorcerer's Stone,* published in 1998; (ii) *Harry Potter and the Chamber of Secrets,* published in 1999; (iii) *Harry Potter and the Prisoner of Akbazan,* published in 1999; and (iv) *Harry Potter and the Goblet of Fire,* published in 2000. (Counterclaims ¶¶ 57, 61; Memorandum of Law in Support of the Motion of Plaintiffs to Dismiss ("Pls.' Mem.") at 4.)

Stouffer is the author of several works based on a set of characters called "Muggles," which were created by Stouffer, in particular *The Legend of RAH and the Muggles,* a children's book containing the Muggles characters which was first published in the 1980s. (Counterclaims ¶¶ 56, 60.) She asserts that she has acquired trademark rights in the "Muggle" and "Muggles" names through her use of such names in children's stories and books and related educational and entertainment services, and has filed trademark applications in the United States Patent and Trademark Office ("PTO") for both marks. *(Id.* ¶ 70.) She has purportedly used and licensed her trademarks for a variety of commercial products. *(Id.* ¶¶ 70, 76, 82.) Further, Stouffer claims to own copyrights in (i) "Muggles," a graphic illustration of the characters, (ii) "RAH," for the book *The Legend of RAH and the Muggles,* (iii) "RAH The Movie," based on the book, and (iv) "Muggle–Bye," a musical arrangement. *(Id.* ¶¶ 62–65.) None of Stouffer's books is currently in print or generally available for sale in the United States. (Complaint ¶ 28; Counterclaims ¶ 104.)

Plaintiffs filed the instant action on November 22, 1999 seeking a declaration that (i) they have not infringed and are not infringing any of Stouffer's copyrights or trademarks, and (ii) Stouffer has falsely represented her copyright and trademark rights, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). On August 14, 2000, the Court denied Stouffer's motion to dismiss for lack of personal jurisdiction, or to transfer the case to the Eastern District of Pennsylvania, where she had filed an action against plaintiffs arising out of their alleged infringement of Stouffer's copyright and trademarks.[2] (Opinion and Order dated August 14, 2000.) Stouffer subsequently filed her answer, in which she asserts several counterclaims, numbered as follows: (i) federal and (ii) state trademark infringement, under the Lanham Act, 15 U.S.C. § 1125, and New York law, respectively; (iii) false representation and unfair competition under the Lanham Act; (iv) unfair competition under New York law; (v) false designation of origin under the Lanham Act; (vi) injury to business reputation under the Lanham Act and New York law; (vii) tortious interference with business relations under New York law, and (viii) copyright infringement, under 17 U.S.C. § 501 *et seq.* (the "Copyright Act"). Plaintiffs now move to dismiss counterclaims three through seven, that is, all of Stouffer's counterclaims except those for copyright and trademark infringement, pursuant to Rule 12(b)(6).

## II. Discussion

At this stage of the proceedings, the Federal Rules of Civil Procedure afford the parties the opportunity to challenge the facial sufficiency of the allegations in the pleadings. In arriving at this Opinion, the Court has not considered the merits of either party's substantive positions. In

---

2. Thereafter, Stouffer voluntarily dismissed the Pennsylvania action.

granting plaintiffs' motion to dismiss certain of Stouffer's counterclaims and denying the motion as to others, the Court is merely ruling that the pleadings have or have not stated allegations which, under the law, are sufficient to survive a motion to dismiss.[3] The Court's decision is not to be interpreted as a finding as to the truth or legitimacy of any allegations in the pleadings.

## A. Motion to Dismiss Standard

In deciding a Rule 12 motion to dismiss counterclaims, the Court must read the pleading as a whole, view the counterclaims in the light most favorable to the claimant, and accept the claimant's factual allegations as true. *See Twinlab Corp. v. Signature Media Servs., Inc.*, No. 99 Civ. 169(AGS), 1999 WL 1115237, at *3 (S.D.N.Y. Dec. 7, 1999) (citing *Gant v. Wallingford Bd. of Educ.*, 69 F.3d 669, 673 (2d Cir.1995)); *Yoder v. Orthomolecular Nutrition Institute*, 751 F.2d 555, 562 (2d Cir.1985) (citing *Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)); *see also Meridien Int'l Bank Ltd. v. Government of the Republic of Liberia*, 23 F.Supp.2d 439, 445 (S.D.N.Y.1998). The Court's function is not to weigh the evidence that might be presented at trial, but merely to determine whether the pleading itself is legally sufficient. *See Festa v. Local 3 Int'l Brotherhood of Electrical Workers*, 905 F.2d 35, 37 (2d Cir. 1990). Under Rule 12(b)(6) specifically, dismissal is inappropriate unless "it appears beyond doubt that the [non-movant] can prove no set of facts in support of the claim which would entitle him to relief." *Staron v. McDonald's Corp.*, 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley, supra*, 355 U.S. at 45–46, 78 S.Ct. 99). The Court may consider "facts stated on the face of

the [pleading] and in documents appended to the complaint or incorporated in the [pleading], as well as [ ] matters of which judicial notice may be taken." *Automated Salvage Transport, Inc. v. Wheelabrator Environmental Systems, Inc.*, 155 F.3d 59, 67 (2d Cir.1998).[4]

"[T]he principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable [that party] to answer and prepare for trial." *Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.*, 10 F.Supp.2d 334, 344 (S.D.N.Y.1998) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir.1988)). Although the pleading requirements under Fed.R.Civ.P. 8(a) ("Rule 8(a)") are construed liberally, "[l]iberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader. If it fails to do so, a motion under Rule 12(b)(6) will be granted." *Id.* (quoting 2 *Moore's Federal Practice* § 12.34[1][b] at 12–60 (3d ed.)).

## B. Lanham Act Claims

■ Stouffer's third and fifth counterclaims are asserted pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which prohibits, *inter alia*, misrepresentation likely to cause confusion about the source of a product. This section provides in relevant part:

(a)(1) Any person who, on or in connection with any goods or services ... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representa-

---

**3.** The proper standard of review is described further in the next section.

**4.** Rule 12(b)(6) provides that if a court considers matters outside the pleadings in determining whether to enter judgment, the motion shall be considered as one for summary judgment "and all parties shall be given reason-

able opportunity to present all material made pertinent to such a motion." Rule 12(b)(6). In this case, the parties have submitted affidavits in support of their positions. The Court declines to consider such affidavits for the purposes of this motion to dismiss.

tion of fact, which—(A) is likely to cause confusion ... as to the origin ... of his or her goods ... shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act. 15 U.S.C. § 1125(a).

### a. False Representation and Unfair Competition [5]

Stouffer's third counterclaim alleges that plaintiffs have "unlawfully used [Stouffer's] marks, character names and likenesses, and other creative properties in interstate commerce to sell and promote plaintiffs' goods and services ... [which] falsely represents or creates the impression in the consumer's mind that [plaintiffs] and Stouffer are associated, connected, or affiliated ..." (Counterclaims ¶ 140; Memorandum of Law on Behalf of Defendant in Response to Plaintiffs' Motion to Dismiss ("Def.'s Mem.") at 12.) However, Stouffer's specific allegations in her third counterclaim do not involve any false representations per se, but rather the misappropriation by plaintiffs of certain aspects of Stouffer's books in the *Harry Potter* books, namely: "(a) using 'Muggles' as the name of a population of non-magical characters, which is substantially similar to the use of 'Muggles' in Stouffer's copyrighted works; (b) using 'Harry Potter' as the name of a primary character, having a relative named 'Lily Potter', and having a bespectacled illustrated likeness, all of which are substantially similar to Stouffer's character named 'Larry Potter' having a relative named 'Lilly Potter' and having a bespectacled likeness in Stouffer's copyrighted work; (c) using 'Neville' as a character name for a somewhat disliked, half-muggle character, which is substantially similar to Stouffer's 'Nevils' characters in her copyrighted works ...; (d) using 'Keeper of the Keys' as a designation for a primary character, Hagrid, which designation is substantially similar to Stouffer's use of the designations 'Keeper of the Gardens, Keeper of the Children, Keeper of the Food,' and the like for certain characters in Stouffer's copyrighted works; [and] (e) using 'Nimbus' as the designation for a flying broom, which designation is substantially similar to Stouffer's use of that identical designation as the name of a flying warrior in Stouffer's copyrighted works." [6] (Counterclaims ¶¶ 142(a)-(e).)

Plaintiffs contend that this claim should be dismissed because Stouffer's allegations "amount to nothing more than a claim that [Stouffer] created copyrighted works, and that Plaintiffs are copying from those works." (Pls.' Mem. at 13; Reply Memorandum of Law in Support of the Motion of Plaintiffs to Dismiss ("Pls.' Rep.") at 7.) In particular, they claim that Stouffer's assertions concerning the alleged misappropriation of "substantially similar" aspects of her copyrighted works are exclusively copyright allegations, because "substantial similarity" and "access" are "indicative of a classic copyright claim." (Pls.' Mem. at 13–15.)

The Court disagrees. Stouffer's allegations in her third counterclaim center on plaintiffs' misrepresentation of the *origin* of the "Muggle" and "Muggles" marks,

---

**5.** Stouffer's assertion of a federal "unfair competition" claim is duplicative of her other Section 43(a) claims. Section 43(a) itself is considered the embodiment of the federal law of unfair competition. Speaking of the expansion of section's scope, the United States Trademark Association Trademark Review Commission has stated: "Section 43(a) is an enigma, but a very popular one. Narrowly drawn and intended to reach false designations or representations as to the geographical origin of products, the section has been widely interpreted to create, in essence, a federal law of unfair competition." *The United States Trademark Association Trademark Review Commission Report and Recommendations to USTA President and Board of Directors,* 77 Trademark Rep. 375, 426 (1987).

**6.** The work referenced in ¶ 142(b) is the *Lilly* book; the work referenced in ¶ 142(e) is called *Silver Linings;* and The *Legend of RAH and the Muggles* is referenced by the remainder of the subparagraphs. (Counterclaims ¶¶ 108, 142.)

and other names and likenesses by their "complete lack and denial of *attribution*, and [ ] misrepresentation of *Rowling's* creativity." (Counterclaims ¶ 141.) As a result, Stouffer alleges, plaintiff have "laid false claim" to her intellectual property. (*Id.*) Further, she asserts that the names "Nevils," the "Keeper of the [Something]," "Larry Potter," "Lilly Potter," and "Nimbus," have come to be associated with Stouffer, as the name "Muggles" has, and that, consequently, consumers are likely to be confused by the use of the names, resulting in damages to Stouffer. (*Id.* ¶¶ 143, 148.) While these allegations are inapposite to a false representation claim in the nature of false advertising, they directly implicate a claim for false designation of origin, which Stouffer asserts in her fifth counterclaim.[7] *See Waldman Publ'g, supra*, 43 F.3d at 781 (stating that claim for false designation of origin under the Lanham Act "prohibits not only ... the relabeling of a printed work ... but also the reproduction of a work with a false representation as to its creator"). Moreover, the fact that Stouffer's allegations of misappropriation sound in copyright, or could be plead as a copyright claim, *see* note 11, *infra*, does not preclude the assertion of trademark claims related to the alleged infringement of the marks in question.[8] *See Carell v. The Shubert Organization, Inc.*, 104 F.Supp.2d 236, 262 (S.D.N.Y.2000) (finding that plaintiff suffi-

ciently stated a Section 43(a) and copyright claim); *Maurizio v. Goldsmith*, 84 F.Supp.2d 455 (S.D.N.Y.2000) (same); *Richard Feiner and Co., Inc. v. Larry Harmon Pictures Corp.*, 38 F.Supp.2d 276, 280 (S.D.N.Y.1999) (same). Accordingly, the Court dismisses Stouffer's third counterclaim as duplicative of her fifth counterclaim, but grants Stouffer leave to replead the latter to incorporate the facts asserted in the former, within 30 days of the date of this Opinion.[9]

**b.  False Designation of Origin**

■ Stouffer's fifth counterclaim alleges false designation of origin under Section 43(a) of the Lanham Act. Section 43(a)(1) prohibits such false designations in two forms: "passing off," in which A promotes A's products under B's name, and "reverse passing off," in which A promotes B's products under A's name. *See Waldman Publ'g, supra*, 43 F.3d at 780. The products in question need not be identical to assert a facially sufficient claim. *See id.* at 781. Stouffer's false designation of origin claim falls into the latter category, because she alleges that plaintiffs are engaged in passing off Stouffer's marks, character names, and the illustrated likeness of "L[H]arry Potter" as their own. (Counterclaims ¶ 158.) In the context of literary works, reverse passing off claims generally consist of the "misappropriation of credit properly belonging to the original creator

---

7.  False representation claims, when they are not plead or considered together with false advertising claims, *see, e.g., Bose Corp. v. Linear Design Labs, Inc.*, 467 F.2d 304, 308 (2d Cir.1972); *Scholastic, Inc. v. Speirs*, 28 F.Supp.2d 862, 872 (S.D.N.Y.1998); *General Cigar Co., Inc. v. G.D.M. Inc.*, 988 F.Supp. 647, 665 (S.D.N.Y.1997), are plead or considered with claims for false designation of origin, *see, e.g., Waldman Publ'g Corp. v. Landoll, Inc.*, 43 F.3d 775, 781 (2d Cir.1994); *Bose, supra*, 467 F.2d at 308; *Rosenthal, A.G. v. Ritelite, Ltd.*, 986 F.Supp. 133, 137 (E.D.N.Y. 1997); *Russian Kurier, Inc. v. Russian Am. Kurier, Inc.*, 899 F.Supp. 1204, 1210 (S.D.N.Y.1995). Stouffer's Counterclaims do not state or suggest a false advertising claim, but do state a cause of action for false designation of origin. *See infra.*

8.  Contrary to plaintiffs' suggestion, the fact that Stouffer has framed her claim in terms of "substantial similarity" and has indicated that plaintiffs had "access" to her works does not warrant the consideration of the claim exclusively in terms of copyright.

9.  This conclusion is further supported by (i) the requirement that, on a motion to dismiss, the Court read the pleading as a whole and liberally construe a non-movant's assertions, and (ii) the fact that Stouffer's fifth counterclaim incorporates paragraphs 44 through 155 of the Counterclaims, including the allegations in her third counterclaim.

of the work." *Waldman Publ'g, supra*, 43 F.3d at 780–81; *see also Margo v. Weiss*, No. 96 Civ. 3842, 1998 WL 2558, at *9 (S.D.N.Y.), *aff'd* 213 F.3d 55 (2d Cir.2000) (analyzing as reverse passing off claim songwriter's allegations of failure to provide ownership credit); *Netzer v. Continuity Graphic Assocs., Inc.*, 963 F.Supp. 1308, 1323 (S.D.N.Y.1997) (describing same in the context of alleged misattribution of comic book character). The harm caused by reverse passing off is that the originator of the product is "involuntarily deprived of the advertising value of its name and of the goodwill that otherwise would stem from public knowledge of the true source of the [ ] product." *Rosenfeld v. W.B. Saunders, Division of Harcourt Brace Jovanovich, Inc.*, 728 F.Supp. 236, 241 (S.D.N.Y.), *aff'd*, 923 F.2d 845 (2d Cir. 1990).

■ A successful reverse passing off claim requires that the claimant establish (i) that the work at issue originated with the claimant; (ii) that origin of the work was falsely designated by the defendant; (iii) that the false designation of origin was likely to cause consumer confusion; and (iv) that the claimant was harmed by the defendant's false designation of origin. *See Waldman Publ'g, supra*, 43 F.3d at 781–85. Such a claim may be asserted whether or not a registered trademark is involved, as Section 43(a) is violated by the use of any "symbol" as a "false designation of origin." 15 U.S.C. § 1125(a); *see Pirone v. MacMillan, Inc.*, 894 F.2d 579, 584 (2d Cir.1990). Reading the Counterclaims as a whole and considering Stouffer's allegations in counterclaims three and five together, Stouffer has alleged facts that support each element of the test. She alleges that she created several marks, character names, and likenesses that were published in her copyrighted literary works (Counterclaims ¶¶ 142, 143); that plaintiffs used such works as their own in promoting their various products and services (*Id.* ¶¶ 140, 141, 158); that consumers have "falsely associated" Stouffer's works

with plaintiffs' works because they have come to be identified with Stouffer (*Id.* ¶¶ 143, 158, 159); and that such confusion "has caused irreparable injury" and "damages" to Stouffer (*Id.* ¶¶ 148, 160). Moreover, plaintiffs' alleged actions potentially affect interstate commerce. (*Id.* ¶ 140); *see Conan Properties, Inc. v. Mattel, Inc.*, 601 F.Supp. 1179, 1183 (S.D.N.Y.1984) (stating that it is not necessary to explicitly plead that the goods in question entered interstate commerce; rather, the allegations need only "contain sufficient facts from which an interstate effect can readily be inferred").

Plaintiffs' contention that Stouffer's allegations concerning false association are conclusory, (Pls.' Rep. at 8), ignores facts pleaded elsewhere in the Counterclaims asserting a likelihood of consumer confusion, in particular, the goodwill purportedly acquired by Stouffer, the similarity of the names and likenesses used by the parties, and the similarity of marketing channels. (Counterclaims ¶¶ 108, 113, 124, 142, 143.)

■ Plaintiffs' contention that the claim should be dismissed as duplicative of either Stouffer's eighth claim, for copyright infringement, or a broader, unasserted copyright claim is also unavailing. (Pls.' Mem. at 15–16; Pls.' Rep. at 8–9.) Courts of this district have barred Lanham Act claims where the plaintiffs' trademark allegations merely restate the allegations of their copyright claims, and in particular, fail to show the "requisite affirmative action of falsely claiming originality beyond that implicit in any allegedly false copyright." *Weber v. Geffen Records, Inc.*, 63 F.Supp.2d 458, 464 (S.D.N.Y.1999); *Armstrong v. Virgin Records, Ltd.*, 91 F.Supp.2d 628, 633 (S.D.N.Y.2000) (finding that attribution of song authorship to defendant "does not venture beyond that implicit in any allegedly false copyright"). In order for a Lanham Act claim to survive in addition to a copyright claim, "an aggrieved author must show more than a violation of the author's protected right to

credit and profit from a creation. The author must make a greater showing that the designation of origin was false, was harmful, and stemmed from some affirmative act whereby [the defendant] affirmatively represented itself as the owner." *Weber, supra,* 63 F.Supp.2d at 463 (citations and internal quotations omitted).

In this case, Stouffer has plead facts that are adequate to meet this burden. She does not simply allege that plaintiffs' copyright or trademark registrations are false designations of origin, *see Lipton v. The Nature Co.,* 71 F.3d 464, 473 (2d Cir. 1995), or that plaintiffs merely failed to credit her for her intellectual property, *Weber, supra,* 63 F.Supp.2d at 463–64; *Armstrong, supra,* 91 F.Supp.2d at 633, although the latter does constitute an element of her claim. Rather, Stouffer alleges affirmative misrepresentation of trademark ownership through plaintiffs' promotion and sale of their various products and services, including the *Harry Potter* books, with an allegedly false designation of origin, (Counterclaims ¶¶ 140, 141, 158), misrepresentation of Rowling's creativity, (*Id.* ¶ 141,) and plaintiffs' use of "improper influenc[e]" on other publishers and news organizations to discourage public recognition of Stouffer's rights, (*Id.* ¶ 116). These allegations are enough, on a motion to dismiss, to make the greater showing necessary to assert a Lanham Act claim. *See Feiner, supra,* 38 F.Supp.2d at 280 (refusing to dismiss Lanham Act claim for reverse passing off where, in addition to alleging false attribution, defendants allegedly claimed that they were the owners and licensors of the plaintiff's copyrighted film works). In cases such as the instant one where more than mere misappropriation is properly alleged, a Lanham Act claim is a viable alternative to a copyright action. *See Waldman Publ'g, supra,* 43 F.3d at 781 ("Through a copyright infringement action, a copyright owner may control who

publishes, sells, or otherwise uses a work. Through a Lanham Act action, an author may ensure that his or her name is associated with a work when the work is used."); *cf. Tracy v. Skate Key, Inc.,* 697 F.Supp. 748, 751 (S.D.N.Y.1988) (holding that both passing off and reverse passing off claims involve the same additional element, deception or misrepresentation, that makes it "not equivalent to any of the exclusive rights" of copyright law recognized in the statute) (citing 1 Nimmer, *supra,* § 1.01[B][1] n. 47 at 1–14, 1–14.1 (1988)).

Thus, the Court declines to dismiss Stouffer's fifth counterclaim, and as noted *supra,* grants her leave to replead it in order to incorporate allegations set forth in her third counterclaim, within 30 days from the date of this Opinion.

## C. State Unfair Competition Claim

Stouffer's fourth counterclaim asserts a cause of action for unfair competition under New York law. She alleges that plaintiffs have "misappropriat[ed] and unlawfully exploit[ed]" her works by "promoting their goods and services to the public through the use of Stouffer's intellectual property." (Counterclaims ¶¶ 151–52.) In particular, she alleges misappropriation of "the distinguishing marks, character likenesses, and character names, of Stouffer and the valuable property and goodwill of Stouffer in her property and marks." [10] (*Id.* ¶ 152.) Further, she alleges that plaintiffs have exerted "improper influenc[e]" on other publishers and news organizations to refrain from republishing Stouffer's works or publicizing her story. (*Id.* ¶ 154.)

Plaintiffs argue that Stouffer's claim should be dismissed as preempted by the Copyright Act, because the claim "fall[s] within the exclusive rights granted to copyright owners under the Act." (Pls.'

---

**10.** The distinguishing marks, character names, and likenesses are those described in Stouffer's third counterclaim, namely, "Mug-

gles", "Larry and Lilly Potter", "Nevils", "Keeper of the [Something]" and "Nimbus". (Counterclaims ¶¶ 142–143.)

Mem. at 11.) They assert that, "in essence," Stouffer only alleges that plaintiffs have "copied her copyrighted works." (*Id.*) The Court disagrees.

■ A state law claim is preempted by federal copyright law "if the subject matter of the state-law right falls within the subject matter of the copyright laws, and the state-law right asserted is equivalent to the exclusive rights protected by federal copyright law." *Kregos v. Associated Press,* 3 F.3d 656, 666 (2d Cir.1993) (citing *Harper & Row Publishers, Inc. v. Nation Enters.,* 723 F.2d 195, 200 (2d Cir.1983), *rev'd on other grounds,* 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985)). Thus, the two criteria for the preemption of state law claims are: (i) whether the particular work in issue falls within the subject matter of copyright (the "subject matter requirement") and (ii) whether the legal or equitable right sought to be protected is equivalent to one of the exclusive rights under the Copyright Act (the "general scope requirement"). The subject matter requirement is met where the work of authorship that is being copied or misappropriated qualifies for copyright protection under Sections 102 or 103 of the Copyright Act. *See* 17 U.S.C. §§ 102, 103. The requirement is met even if the work does not actually rise to the level of federal copyright protection, *see Financial Info. v. Moody's Investors Serv.,* 808 F.2d 204, 209 (2d Cir.1986) (citing *Durham Indus., Inc. v. Tomy Corp.,* 630 F.2d 905, 919 n. 15 (2d Cir.1980)), or if the material alleged to be misappropriated is not copyrightable, *see Nat'l Basketball Assoc. v. Motorola, Inc.,* 105 F.3d 841, 848 (2d Cir.1997) ("Copyrightable material often contains uncopyrightable elements within it, but Section 301 preemption bars state law misappropriation claims with respect to uncopyrightable as well as copyrightable elements."); *Harper & Row, supra,* 723 F.2d at 200–01 (holding that state law claims based on the copying of excerpts from President Ford's memoirs were preempted even with respect to information that was purely factual and not copyrightable). In this case, Stouffer alleges the misappropriation of certain elements of her "copyrighted works," specifically *The Legend of RAH and the Muggles,* the *Lilly* book, and *Silver Linings.* (Counterclaims ¶¶ 142–144.) As Stouffer acknowledges, these literary works are clearly subject to copyright protection. (*Id.* ¶¶ 142, 144); 17 U.S.C. § 102(a)(1) (listing "literary works" as falling within the subject matter of copyright). Stouffer's claims of infringement of elements of her literary works, therefore, meet the subject matter requirement necessary for preemption.[11]

11. Even if the misappropriated material was required to be copyrightable, Stouffer's claims would still fall within the subject matter of copyright. While Stouffer asserts that the material she seeks to protect are "words and short phrases such as names, titles and slogans," (Def.'s Mem. at 8, citing 37 C.F.R. § 202.1), her allegations of copying encompass not only the names "Muggles," "Larry Potter," "Lilly Potter," "The Keeper of [Something]," "Nevils," and "Nimbus," but the "content" of the characters as well. (Counterclaims ¶ 144.) Specifically, Stouffer asserts that plaintiffs' use of (i) "Muggles" as "a population of non-magical characters," (ii) "Harry Potter" as a "bespectacled" and "primary" character, as "Lily Potter" as his relative, (iii) "Neville" as a "disliked, half-muggle character," (iv) "Keeper of the Keys" as a "primary character, Hagrid" with certain characteristics, and (v) "Nimbus" as a flying broom—all of which are "substantially similar" to similar characters or designations in Stouffer's copyrighted works. (Counterclaims ¶¶ 142(a)-(e).) She also asserts that the content of the "semi-magical orphan" characters, Rah and Zyn, who are raised by Muggles, is "not unlike orphaned magical Harry Potter, who is raised by non-magical muggles." (*Id.* ¶ 144.) Therefore, Stouffer's allegations as to the above character names and likenesses encompass the subject matter of copyright, *see Nichols v. Universal Pictures Corp.,* 45 F.2d 119, 121 (2d Cir.1930) (describing copyright protection for fictional characters); *Warner Bros., Inc. v. Am. Broadcasting Companies, Inc.,* 720 F.2d 231, 246 (2d Cir.1983) (considering copyright claim filed by owner of rights in the fictional character Superman), even if the above characters fail to rise to the level of federal statutory copyright, *see Financial Info., supra,* 808 F.2d at 209 (citing *Durham, supra,* 630 F.2d at 919 n. 15).

Stouffer seeks to analogize this case to the line of cases represented by *International News Service v. Associated Press*, 248 U.S. 215, 39 S.Ct. 68, 63 L.Ed. 211 (1918), the so-called "hot" news cases. This contention is unavailing. First, these cases provide an exception to preemption for cases where the underlying work is not copyrightable. *See Financial Info., supra*, 808 F.2d at 208–09. Here Stouffer's literary works, and the alleged misappropriated character material, are clearly within the scope of the Copyright Act. Second, the "hot" news cases are limited to the narrow circumstances where the defendant takes time-sensitive information that the plaintiff has generated or gathered at a cost, and so reduces the incentive for the plaintiff to produce the product or service that its existence or quality would be substantially threatened. *See Motorola, supra*, 105 F.3d at 845; *Financial Info., supra*, 808 F.2d at 209. The instant case unambiguously falls outside of these factual parameters.

■ However, while the subject matter requirement is clearly met, the Court declines to dismiss Stouffer's unfair competition claim as preempted, because it falls outside the general scope requirement of the Copyright Act. The Act expressly preempts "all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106 in works of authorship . . ." 17 U.S.C. § 301(a).[12] However, no preemption occurs if "an 'extra element' is 'required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action.' " *Id.* (quoting *Altai, supra*, 982 F.2d at 716). "A state law claim is not preempted if the 'extra element' changes the 'nature of the action so that it is qualitatively different from a copyright infringement claim.' " *Id.* While "state law

claims that rely on the misappropriation branch of unfair competition are preempted," *Warner Bros., supra*, 720 F.2d at 246 (citing *Durham, supra*, 630 F.2d at 918–19); *Arden v. Columbia Pictures Indus., Inc.*, 908 F.Supp. 1248, 1263 (S.D.N.Y. 1995) (finding that a state law unfair competition claim that "[d]efendants misappropriated [plaintiff's work] for their own commercial gain and profit" sounds in misappropriation and is thereby preempted), claims that allege a false designation of origin via "passing off" "are not asserting rights equivalent to those protected by copyright and therefore do not encounter preemption." *Warner Bros., supra*, 720 F.2d at 246 (citing Nimmer §§ 1.01[B][1] n. 47, 2.12 n. 25 (1983)); *see also Weber, supra*, 63 F.Supp.2d at 464 (stating that, for both federal and state law trademark claims, the required "extra element" is the "affirmative action of falsely claiming originality beyond that implicit in any false copyright"); H.R.Rep. No. 1476, 94th Cong., 2d Sess. 132 (1976) ("Section 301 is not intended to preempt common law protection in cases involving activities such as false labeling, fraudulent representation, and passing off even where the subject matter involved comes within the scope of the copyright statute.")

As discussed *supra* with respect to Stouffer's false designation of origin claim, Stouffer has asserted facts that support a reverse passing off claim, and has alleged the necessary extra element to affirmatively distinguish that claim from a copyright infringement action. Accordingly, the Court denies plaintiffs' motion to dismiss Stouffer's fourth counterclaim. On this claim, as with plaintiffs' false designation of origin claim under Section 43(a), the Court reaches this conclusion not by weighing the evidence presented in the pleadings, but merely by considering the facial sufficiency of Stouffer's allegations.

---

12. The referenced "scope of copyright," 17 U.S.C. § 106, affords a copyright owner the exclusive right to: "(1) reproduce the copyrighted work; (2) prepare derivative works;

(3) distribute copies of the work by sale or otherwise; and, with respect to certain artistic works, (4) perform the work publicly; and (5) display the work publicly."

## D. Dilution and Defamation Claims

Stouffer's sixth counterclaim, brought pursuant to the Lanham Act and Section 360-l of the New York General Business Law ("NYGBL"), asserts a claim for injury to business reputation or dilution, and according to the submissions of the parties, also for defamation. (Counterclaims ¶ 162; Pls.' Mem. at 17–19; Def.'s Mem. at 14–17; Pls.' Rep. at 9–11.) The Court addresses each claim in turn.

### a. Dilution

█ In the Counterclaims, Stouffer asserts that her reputation and her intellectual property will be "injur[ed] ... among certain consumers" through the "association of the 'Muggle' and 'Muggles' marks and Stouffer's characters with the witchcraft, wizardry, and mature themes of death and evil found in the *Harry Potter* books." (Counterclaims ¶ 164.) This is a claim for dilution by "tarnishment." In contrast to a trademark infringement case, where a claimant must establish likelihood of consumer confusion, the salient issue in establishing dilution by tarnishment under both state and federal law is the "whittling down" of the identity or reputation of a tradename or mark. *See Starter Corp. v. Converse, Inc.*, No. 95 Civ. 3678, 1996 WL 684165, at *4 (S.D.N.Y. Nov. 26, 1996) (citing *Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 94 (2d Cir.1993) and *Sally Gee, Inc. v. Myra Hogan Inc.*, 699 F.2d 621, 625–26 (2d Cir.1983)). Moreover, the sole relief possible on a dilution claim under either federal or state law is injunctive relief, rather than monetary damages. 15 U.S.C. § 1125(c); NYGBL § 360–1 (McKinney's 1999).

█ In order to establish dilution under the Section 43(c) of the Lanham Act, also known as the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c), a claimant must show that: (i) the senior mark is famous; (ii) the senior mark is distinctive; (iii) the junior use is a commercial use in commerce; (iv) the junior use began after the senior mark had become famous; and (v) the junior use caused dilution of the distinctive quality of the senior mark. *See Nabisco, Inc. v. PF Brands, Inc.*, 191 F.3d 208, 215 (2d Cir.1999). Under the New York state anti-dilution statute,[13] the necessary elements for a dilution or injury to business reputation claim are the possession of a distinctive trademark and likelihood of dilution.[14] *See Sally Gee, supra,* 699 F.2d at 625; *Mead Data Cent., Inc. v. Toyota Motor Sales,* 875 F.2d 1026, 1029 (2d Cir.1989).

13. This statute provides: "Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." NYGBL § 360–1.

14. Stouffer requests injunctive relief for injury to her business reputation on the same facts, and under the same statute, as her dilution claim. The Court treats these claims together. A claim of tarnishment is better understood as arising from a "likelihood of injury to business reputation" rather than from a likelihood of "dilution of the distinctive quality of a mark." *See New York Stock Exchange, Inc. v. New York, New York Hotel, LLC,* 69 F.Supp.2d 479, 491 (S.D.N.Y.1999). Tarnishment "generally arises when the plaintiff's trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product." *Id.* (quoting *Deere & Co. v. MTD Products, Inc.,* 41 F.3d 39, 43 (2d Cir. 1994)). As such, "[t]he essence of tarnishment therefore is not a dilution or reduction in the distinctiveness of a mark. It is instead the displacement of positive with negative associations of the mark that ... reduces the value of the mark to the trademark owner." *Id.* (citing Restatement (Third) of Unfair Competition § 25 cmt. c (1995)); *see also Trademark Ass'n Report, supra,* 77 Trademark Rep. at 434 ("Although tarnishment can dilute trademark distinctiveness, the typical injury is less dilution than injury to reputation."). Moreover, to the extent that Stouffer alleges injury to her personal reputation under Section 360–1, (Def.'s Mem. at 15), her claim must be dismissed, as the statute only protects injury to business reputation.

Plaintiffs assert that Stouffer fails to plead a dilution claim because her marks "are not of truly distinctive quality and have not acquired secondary meaning." (Pls.' Mem. at 19) (internal quotation omitted.) This contention is unavailing, because such issues involve questions of law and fact that go well beyond the pleadings, and which Stouffer will attempt to establish during discovery and/or at trial. Moreover, Stouffer's statement of facts is sufficient to allege the necessary elements to state a claim under both federal and state law with respect to the "Muggle" and "Muggles" marks, namely that these marks became distinctive and acquired secondary meaning in the late 1980s (and have remained distinctive), and that plaintiffs' subsequent use of the "Muggles" mark in the *Harry Potter* books has diluted the value of Stouffer's property. (Counterclaims ¶¶ 70–100, 135, 164.) Reading the Counterclaims as a whole and accepting Stouffer's factual allegations as true, the Court declines to dismiss Stouffer's dilution claims under federal and state law, which, if proven, could avail Stouffer of injunctive relief.

### b. Defamation

On its face, Stouffer's sixth counterclaim does not assert a cause of action for defamation; however, reading the Counterclaims as a whole and Stouffer's assertion of harm to her business reputation broadly, both parties have read a defamation claim into Stouffer's pleadings. (Def.'s Mem. at 16–17; Pls.' Mem. at 17–18.) Accepting that such a claim is asserted, Stouffer fails to adequately plead a cause of action for defamation.

In order to establish a defamation claim under New York law, a claimant must allege (i) a false and defamatory statement of fact, (ii) of or concerning the claimant, (iii) publication to a third party, and (iv) injury to the claimant as a result. *See Nowak v. EGW Home Care, Inc.,* 82 F.Supp.2d 101, 113 (W.D.N.Y.2000) (citing *Weldy v. Piedmont Airlines, Inc.,* 985 F.2d 57, 61 (2d Cir.1993)). However, "while the defamation need not be plead *in haec verba,* a pleading is only sufficient if it adequately identifies 'the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated.'" *Keady v. Nike, Inc.,* 116 F.Supp.2d 428, 439 (S.D.N.Y.2000) (quoting *Broome v. Biondi,* No. 96 Civ. 0805, 1997 WL 83295, at *2 (S.D.N.Y. Feb. 10, 1997)). "The central concern is that the complaint afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Kelly v. Schmidberger,* 806 F.2d 44, 46 (2d Cir.1986) (internal quotations omitted). Mere conclusory statements that the claimant was disparaged by false statements are insufficient to state a defamation claim. *See Reilly v. Natwest Markets Group, Inc.,* 181 F.3d 253, 271 (2d Cir.1999) (affirming dismissal of plaintiff's unsupported claim of defamation that defendant "said 'something bad' about him to client"); *Ford v. Clement,* 834 F.Supp. 72, 78 (S.D.N.Y.1993), *aff'd* 29 F.3d 621 (2d Cir.1994) (finding allegations of defamation insufficient where they failed to "give [defendant] any notice whatsoever of the communications at issue").

The only possible basis for a defamation claim in this case is plaintiffs' alleged "portray[al] [of plaintiff] as a gold-digger," specifically by their alleged public statements that Stouffer's claims are "absurd," "ridiculous," and "meritless." (Def.'s Mem. at 16; Counterclaims ¶¶ 117, 118.) Stouffer's claim is deficient for two reasons. First, she completely fails to identify who made the alleged statements, at what times or places, and to whom the statements were made. *Cf. Keady, supra,* 116 F.Supp.2d at 439 (dismissing defamation claim that asserted "a series of defamatory statements without identifying the substance of those statements, by whom they were made, or to whom they were communicated"); *Ives v. Guilford Mills,* 3 F.Supp.2d 191, 199 (N.D.N.Y. 1998) (dismissing defamation claim where

**850**

it did not identify with precision who at defendant company made the alleged statements, at what times or places, and to whom the statements were made). Second, the alleged statements are statements of opinion, rather than fact, and the former are not protected under New York law. *See Levin v. McPhee,* 119 F.3d 189, 195 (2d Cir.1997); *600 West 115th Street Corp. v. Von Gutfeld,* 80 N.Y.2d 130, 139, 589 N.Y.S.2d 825, 603 N.E.2d 930 (1992) (stating that "[b]ecause falsity is a necessary element in a defamation claim involving statements of public concern ... only statements alleging facts can properly be the subject of a defamation action"). There is no bright line test to aid in determining whether a statement is one of opinion or fact, as "expressions of 'opinion' may often imply an assertion of objective fact." *Belly Basics, Inc. v. Mothers Work, Inc.,* 95 F.Supp.2d 144, 145 (S.D.N.Y.2000) (quoting *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 18, 110 S.Ct. 2695, 111 L.Ed.2d 1 (1990)). In New York, this determination is a matter for the Court. *See Levin, supra,* 119 F.3d at 196 (citing *Gross v. New York Times Co.,* 82 N.Y.2d 146, 154, 603 N.Y.S.2d 813, 623 N.E.2d 1163 (1993)). New York law dictates a three-factor test to distinguish statements of fact from statements of opinion: (i) whether the challenged statements have a precise and readily understood meaning; (ii) whether the statements are susceptible of being proven false; and (iii) whether the context signals to the observer that the statements are more likely to be expressions of opinion rather than fact. *See id.* at 196 (citing *Gross, supra,* 82 N.Y.2d at 154, 603 N.Y.S.2d 813, 623 N.E.2d 1163). The thrust of the dispositive inquiry is "whether a reasonable [observer] could have concluded that [the statements were] conveying facts about the plaintiff." *Gross, supra,* 82 N.Y.2d at 152, 603 N.Y.S.2d 813, 623 N.E.2d 1163. Plaintiffs' alleged statements that Stouffer's claims are "absurd," "ridiculous," or "meritless" neither have precise meanings, as

they may signify different things to different individuals; nor, because of their relative meanings, are they susceptible of being proven false. While Stouffer has not provided the context of the statements, the record clearly reflects that such statements would be "readily understood as conjecture, hypothesis, or speculation," which "signals the [observer] that what is said is opinion, and not fact," particularly in light of plaintiffs' factual and legal assertions in the context of this lawsuit. *Levin, supra,* 119 F.3d at 197 (quoting *Gross, supra,* 82 N.Y.2d at 155, 603 N.Y.S.2d 813, 623 N.E.2d 1163); *see also Gross, supra,* 82 N.Y.2d at 153, 603 N.Y.S.2d 813, 623 N.E.2d 1163 (distinguishing between a statement of opinion that implies a basis in undisclosed facts, which is actionable, and a statement of opinion that is accompanied by a recitation of the facts on which it is based or one that does not imply the existence of undisclosed underlying facts, which is not actionable). Accordingly, to the extent it asserts a claim for defamation, Stouffer's sixth counterclaim is dismissed with prejudice.

**E. Tortious Interference Claim**

Stouffer's seventh claim is for tortious interference with prospective business relations. In order to state such a claim under New York law, a plaintiff must show: (i) business relations with a third party; (ii) defendants' interference with those business relations; (iii) that defendants acted with the sole purpose of harming the plaintiff (i.e. with malice) or used dishonest, unfair, or improper means; and (iv) injury to the relationship. *See Purgess v. Sharrock,* 33 F.3d 134, 141 (2d Cir.1994) (citing *Burba v. Rochester Gas & Elec. Corp.,* 139 A.D.2d 939, 528 N.Y.S.2d 241 (4th Dept.1988)).

In this case, Stouffer claims that she (i) "had and has reasonable expectation of economic advantage based on [her] performed and prospective contracts to provide goods and services to third parties

[i.e. book publishers] [15] related to her intellectual property;" (ii) plaintiffs have interfered with her relations with these publishers, specifically by making "statements" to the third parties that induced or persuaded the publishers not to do business with Stouffer; (iii) that these statements were calculated to prevent publishers from doing business with Stouffer, or to interfere with Stouffer's relationships with such publishers; and (iv) that, consequently, such publishers chose not to republish Stouffer's books. (Counterclaims ¶¶ 116, 168–171.) Further, Stouffer alleges earlier in the Counterclaims that plaintiffs "have influenced news organizations under TWE's large media umbrella not to cover Stouffer's story." (*Id.* ¶ 116.) She also alleges, without providing supporting facts, that "the conduct of [plaintiffs] was dishonest, unfair, malicious, fraudulent, improper, and oppressive under New York law," and that she is "entitled to actual, punitive, and exemplary damages...." (*Id.* ¶ 173.)

Even under liberal federal pleading standards, Stouffer's allegations are insufficient to state a tortious interference claim. Absent from her pleading are any facts suggesting that plaintiffs interfered with a specific business relationship. Stouffer alleges that beginning in mid–1997, she contacted publishers and promoted her books and related merchandise, but that various publishers refused to consider her works because of a perceived likeli-

hood of confusion with the *Harry Potter* books. (Counterclaims ¶¶ 60, 100, 104.) Stouffer asserts that she "was involved in business relations" with one potential publisher, American Educational Publishing/Landoll ("Landoll"), which she claims refused to consider her work because of concerns related to plaintiffs' works.[16] (*Id.* ¶¶ 101, 104; Def.'s Mem. at 17–18.) However, Stouffer does not allege any facts indicating that plaintiffs had any contact with Landoll, interfered with her relations with Landoll, or that but for plaintiffs' conduct she would have entered into or extended a contractual relationship with the publisher. *See M.J. & K. Co. v. Matthew Bender and Co.*, 220 A.D.2d 488, 631 N.Y.S.2d 938, 940 (2d Dep't 1995) ("Tortious interference with business relations 'applies to those situations where the third party would have entered into or extended a contractual relationship with plaintiff but for the intentional and wrongful acts of the defendant.'") (quoting *WFB Telecommunications v. NYNEX Corp.*, 188 A.D.2d 257, 590 N.Y.S.2d 460, 461 (1st Dep't 1992)). Rather, Stouffer asserts only that Landoll's interest in her works "inexplicably and mysteriously vanished." (Def.'s Mem. at 18.)

In her opposition papers, Stouffer states that the reference in the Counterclaims to the "potential publishers" who were influenced by plaintiffs' statements to third parties "clearly" included Landoll, but fails to explain why she did not specify this link

---

15. Stouffer states in her opposition papers that such "third parties" are "unknown individuals employed by [] potential [book] publishers." (Def.'s Mem. at 17.)

16. In her opposition papers, Stouffer refers to "business relations with Simon & Shuster." (Def.'s Mem. at 17.) However, the Counterclaims contain no mention of this relationship, and parties are not entitled to assert new facts in submissions on a motion to dismiss. *See Aniero Concrete Co., Inc., v.* No. 94 Civ. 3506, 2000 WL 863208, at *31 (S.D.N.Y. June 27, 2000) (excluding new facts in opposition brief as extra-pleading matters on motion to dismiss, and limiting consideration of the sufficiency of claim to the "four corners of the pleading") (citing *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999)). Stouffer

also refers for the first time to communications between her publicist and the producer of a television program appearing on the CNN Network, owned by TWE, whose producer requested that the publicist not send press releases because the program would never cover Stouffer's story. (Def.'s Mem. at 19.) Even accepting these new allegations, plaintiff alleges no facts that would indicate that there was any interference here, let alone by plaintiffs, and does not allege that she suffered any damages as a result, stating merely that her lack of access to Time Warner's news organizations is "clearly injurious to her." (*Id.*) Thus, such allegations provide no additional support for Stouffer's tortious interference claim.

in her pleadings. (*Id.* at 17.) She then states that she "is not in the position to know exactly what type of economic pressure Plaintiffs exerted on these publishers, nor the names of the third parties to which plaintiffs specifically spoke . . ." (*Id.* at 18.) Without any details as to the identity of the third parties or plaintiffs' dealings with them, Stouffer's conclusory allegation that such third parties influenced the decisions of the publishers, and that such publishers included Landoll, is not sufficient to apprise plaintiffs of Stouffer's claims. *See Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 17 F.Supp.2d 275, 293 (S.D.N.Y. 1998) (finding that conclusory allegation without any relevant supporting facts insufficient to state a cause of action for tortious interference) (citing *Washington Ave. Assocs. Inc. v. Euclid Equipment, Inc.*, 229 A.D.2d 486, 645 N.Y.S.2d 511, 512 (2d Dep't 1996)); *S.A.E. Motor Parts Co., Inc. v. Tenenbaum*, 226 A.D.2d 518, 640 N.Y.S.2d 615, 616 (2d Dep't.1996) (stating that tortious interference allegations must be supported by factual allegations); *M.J. & K. Co., supra*, 631 N.Y.S.2d at 940 (finding that the plaintiffs' "mere contentions that third parties canceled contracts with them because of the alleged defamatory remarks made by [defendant's] representatives, offered with no factual basis to support the allegations," and was insufficient to state a cause of action for tortious interference with contractual or business relations).

Moreover, Stouffer only makes the conclusory statement—not specifically directed to plaintiffs' actions with respect to Landoll—that plaintiffs acted "dishonest[ly], unfair[ly], or improper[ly] (wrongful[ly]")—without any further explanation of the means employed. (*Id.* at 17.) Such assertions are insufficient to allege malice or unlawful means, a necessary element of a claim for tortious interference with business relations. *See John R. Loftus, Inc. v. White*, 150 A.D.2d 857, 540 N.Y.S.2d 610, 612 (3d Dep't 1989) (dismissing claim for tortious interference with prospective business advantage where plaintiff "does not demonstrate any factual basis for its alle-

gations of malice, other than suspicion"); *NRT Metals, Inc. v. Laribee Wire, Inc.*, 102 A.D.2d 705, 476 N.Y.S.2d 335, 338 (1st Dep't 1984) (finding that "the record discloses no evidence of malice or the use of unlawful means by [counterclaim defendant], proof of one or the other being necessary to sustain an action for interference with at-will business relationships").

Because Stouffer has failed to allege the most basic elements of tortious interference under New York law, she has failed to provide plaintiffs with adequate notice of her claim under Rule 8(a). While the Counterclaims sufficiently allege that plaintiffs' actions may have "exacerbated" the likelihood of consumer confusion with respect to the parties' tradenames or marks, (Counterclaims ¶ 104), Stouffer has not plead facts suggesting that plaintiffs prevented her from garnering any prospective economic advantage. The Court therefore dismisses the seventh counterclaim without prejudice, and grants Stouffer leave to replead that claim within 30 days of the date of this Opinion.

## III. Conclusion

For the foregoing reasons, the Court (i) dismisses Stouffer's third counterclaim as duplicative of her fifth counterclaim, (ii) declines to dismiss Stouffer's fifth counterclaim and grants Stouffer leave to replead that claim within 30 days of the date of this Opinion to assert facts alleged in her third counterclaim, (iii) declines to dismiss Stouffer's fourth counterclaim as preempted by the Copyright Act, (iv) dismisses Stouffer's sixth counterclaim to the extent it asserts a claim for defamation, but declines to dismiss this claim to the extent it asserts a claim for dilution under federal or state law, and (v) dismisses Stouffer's seventh counterclaim without prejudice and with leave to replead within 30 days of the date of this Opinion.

SO ORDERED.